No. 24-10117-DD

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

UNITED STATES of AMERICA,
*Plaintiff-Appellee*,

v.

JOSHUA EUGENE GAINES,
*Defendant-Appellant*.

On Appeal from the United States District Court
for the Northern District of Alabama (Northeastern)
No. 5:22-cr-0165-LCB-HNJ

**BRIEF OF THE UNITED STATES**

PRIM F. ESCALONA
United States Attorney
Northern District of Alabama

JOHN M. HUNDSCHEID
Assistant United States Attorney
United States Attorney's Office
200 Davis Circle, Suite 300
Huntsville, Alabama 35801
(256) 534-8285

No. 24-10117-DD

*United States of America v. Joshua Eugene Gaines*

**CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT**

The United States Attorney for the Northern District of Alabama, through undersigned counsel, certifies that, in addition to the persons listed in the Defendant-Appellant's Certificate of Interested Persons and Corporate Disclosure Statement, the following individual may have an interest in the outcome of this case:

Hundscheid, John M., Assistant U.S. Attorney for the Northern District of Alabama, counsel for the United States in these proceedings.

*/s/ John M. Hundscheid*

John M. Hundscheid
Assistant United States Attorney

C-1 of 1

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument is unnecessary because the record and the parties' briefs adequately present the factual and legal issues necessary for disposition of this appeal. *See* Fed. R. App. P. 34(a)(2)(C); 11th Cir. R. 34-3(b)(3).

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT ..................................................................C-1

STATEMENT REGARDING ORAL ARGUMENT ............................................. i

STATEMENT OF JURISDICTION.......................................................... xi

STATEMENT OF THE ISSUES.................................................................1

STATEMENT OF THE CASE.....................................................................1

    I.   Gaines moves to dismiss the indictment on Second Amendment grounds. ...............................................................................................2

    II.    Gaines moves to suppress the firearms.................................................2

      A.  An evidentiary hearing is held...........................................................3

      B.  The district court denies the motion to suppress. ..............................5

    III.  Gaines proceeds to trial and is convicted of being a felon in possession of a firearm..............................................................................................6

      A.  The defense moves for acquittal under Rule 29. ...............................7

      B.  The district court instructs the jury.....................................................9

      C.  Gaines is sentenced.............................................................................11

    IV.  Standards of Review .............................................................................12

SUMMARY OF ARGUMENT ...................................................................13

ARGUMENT ...............................................................................................15

    I.   The district court did not abuse its discretion by using "felony" to refer to "a crime punishable by imprisonment for a term exceeding one year" in its jury instructions.......................................................................15

      A.  The jury could have only convicted Gaines if it found that he knew he had been convicted of a crime punishable by more than a year of imprisonment...................................................................................17

      B.  In adopting § 922(g)(1), Congress intended to prohibit persons convicted of offenses meeting the common law definition of felony from possessing firearms. ....................................................................19

II.   Gaines's previous felony conviction was punishable by a term of imprisonment of more than one year...........................................................21

    A.   The Statutory Scheme for Class D Felonies.....................................23

    B.   Gaines's Class D felony was punishable by more than a year of imprisonment...................................................................................26

    C.   Gaines's reliance on the statutory limitation on incarceration for probation revocation sentences is misplaced. .........................................32

    D.   A defendant can receive a sentence of incarceration of more than one year for a Class D felony under Alabama law. .......................................36

III.    The district court correctly denied the motion to suppress................39

    A.   No *Rodriguez* violation occurred because the stop was not unlawfully prolonged before consent was given. .......................................................40

    B.   Gaines cannot show a nexus between the constitutional violation he alleges (unlawful detention) and the discovery of the firearm in a backpack during the consent search.......................................................44

IV.   Binding precedent forecloses Gaines's constitutional challenge to § 922(g)(1)......................................................................................................46

V.   Binding precedent forecloses Gaines's constitutional challenge to the district court considering acquitted conduct at sentencing. .......................47

CONCLUSION.........................................................................................48

CERTIFICATE OF COMPLIANCE........................................................49

CERTIFICATE OF SERVICE .................................................................50

## TABLE OF CITATIONS

Page(s)

Cases

*Alabama v. Shelton*,
535 U.S. 654 (2002) ................................................................. 32

*Allen v. State*,
285 So. 3d 864 (Ala. Crim. App. 2019) ................................. 34

*Baginski v. Lynch*,
229 F. Supp. 3d 48 (D.D.C. 2017) ......................................... 36

*Ballard v. State*,
85 So. 3d 485 (Ala. Crim. App. 2011) ................................... 35

*Carachuri-Rosendo v. Holder*,
560 U.S. 563 (2010) ...................................... 20, 37, 38, 39

*Corbitt v. State*,
369 So. 3d 682 (Ala. Crim. App. 2022) ................................. 34

*Flick v. Att'y Gen., Dep't of Just.*,
812 F. App'x 974 (11th Cir. 2020) ......................................... 46

*Goldings v. Winn*,
383 F.3d 17 (1st Cir. 2004) ..................................................... 29

*Heupel v. State*,
113 So. 3d 695 (Ala. Crim. App. 2012) ................................. 28

*Ex parte Hill*,
71 So. 3d 3 (Ala. 2009) ................................................. 28, 34

*Iacaboni v. United States*,
251 F. Supp. 2d 1015 (D. Mass. 2003) ................................. 29

iv

*Laakonen v. State*,
   293 So.3d 439 (Ala. Crim. App. 2019) .................................................. 27, 28, 30

*Lewis v. United States*,
   491 F. App'x 84 (11th Cir. 2012) ....................................................................45

*Miller v. United States*,
   735 F.3d 141 (4th Cir. 2013) .................................................................32

*Mosley v. State*,
   187 So. 3d 1194 (Ala. Crim. App. 2015) ..........................................................31

*N.Y. State Rifle & Pistol Ass'n v. Bruen*,
   142 S. Ct. 2111 (2022) ..........................................................................2

*Reese v. State*,
   97 So. 3d 184 (Ala. Crim. App. 2012) ..............................................................28

*Rehaif v. United States*,
   139 S. Ct. 2191 (2019) .........................................................................16

*Rodriguez v. United States*,
   575 U.S. 348 (2015) ........................................... 1, 2, 14, 15, 40, 42, 45

*Schrader v. Holder*,
   704 F.3d 980 (D.C. Cir. 2013) ..............................................................36

*State v. Bethel*,
   55 So. 3d 377 (Ala. Crim. App. 2010) ..............................................................25

*State v. Friedley*,
   291 So. 3d 1211 (Ala. 2018) ....................................................................28

*United States v. Barlow*,
   811 F.3d 133 (4th Cir. 2015) .................................................................32

*United States v. Braun*,
   453 F. Supp. 3d 883 (M.D. La. 2020) ..............................................................12

*United States v. Browne,*
   505 F.3d 1229 (11th Cir. 2007) .................................................... 16, 17

*United States v. Coleman,*
   2022 WL 17548610 (N.D. Ala. Aug. 4, 2022) ....................................43

*United States v. Dawson,*
   64 F.4th 1227 (11th Cir. 2023) ....................................................36

*United States v. Donruss Co.,*
   393 U.S. 297 (1969) ...................................................................19

*United States v. Dubois,*
   94 F.4th 1284 (11th Cir. 2024) ........................................ 15, 46, 47

*United States v. Focia,*
   869 F.3d 1269 (11th Cir. 2017) ...................................................19

*United States v. Gardner,*
   34 F.4th 1283 (11th Cir. 2022) .............................................. 26, 27

*United States v. Gonzalez,*
   275 F. App'x 930 (11th Cir. 2008) .......................................... 43, 44

*United States v. Grigsby,*
   111 F.3d 806 (11th Cir. 1997) .....................................................18

*United States v. Grushko,*
   50 F.4th 1 (11th Cir. 2022) .........................................................13

*United States v. Harris,*
   2018 WL 6498715 (E.D. Tex. Dec. 11, 2018) ............................... 12, 43

*United States v. Hisey,*
   12 F.4th 1231 (10th Cir. 2021) ...................................................31

*United States v. Houston,*
   589 F. App'x 507 (11th Cir. 2015) ...............................................45

*United States v. Isnadin*,
    742 F.3d 1278 (11th Cir. 2014) .................................................................. 12, 17

*United States v. Kapperman*,
    764 F.2d 786 (11th Cir. 1985) ...............................................................45

*United States v. Keith*,
    2021 WL 6340985 (S.D. Ga. Dec. 2....................................................42

*United States v. Lopez*,
    590 F.3d 1238 (11th Cir. 2009) ...........................................................12

*United States v. Maddox*,
    803 F.3d 1215 (11th Cir. 2015) ...........................................................47

*United States v. Mahone*,
    179 F. Supp. 3d 760 (E.D. Mich. 2016)...............................................43

*United States v. McAdory*,
    935 F.3d 838 (9th Cir. 2019) ...............................................................31

*United States v. Melendez-Davila*,
    836 F. App'x 282 (5th Cir. 2020) ........................................................38

*United States v. Nealy*,
    232 F.3d 825 (11th Cir. 2000) .............................................................21

*United States v. Nix*,
    438 F.3d 1284 (11th Cir. 2006) ...........................................................26

*United States v. Paige*,
    604 F.3d 1268 (11th Cir. 2010) ...........................................................13

*United States v. Pierre*,
    No. 23-11604, 2024 WL 1070655 (11th Cir. Mar. 12, 2024) .............46

*United States v. Prather*,
    205 F.3d 1265 (11th Cir. 2000) ...........................................................12

vii

*United States v. Rozier,*
  598 F.3d 768 (11th Cir. 2010) ............................................................... 15, 46, 47

*United States v. Salkil,*
  10 F.4th 897 (8th Cir. 2021) ...................................................................42

*United States v. Simmons,*
  649 F.3d 237 (2011).................................................................................. 38, 39

*United States v. Trujillo,*
  146 F.3d 838 (11th Cir. 1998) .................................................................12

*United States v. Ubaldo-Viezca,*
  398 F. App'x 573 (11th Cir. 2010) ..........................................................45

*United States v. Vargas,*
  848 F.3d 971 (11th Cir. 2017) ........................................................ 40, 41, 42

*United States v. Ward,*
  2017 WL 1549474 (N.D. Cal. May 1, 2017)..........................................43

*United States v. Wilson,*
  662 F. App'x 693 (11th Cir. 2016) ..........................................................43

Statutes

8 U.S.C. § 1229b(a)(3)................................................................................39

18 U.S.C. § 921(20) ....................................................................................19

18 U.S.C. § 921(20)(B)...............................................................................26

18 U.S.C. § 922(g)(1)
  .............................. xi, 6, 10, 13, 14, 15, 16, 19, 20, 22, 26, 30, 32, 36, 37, 46, 47

18 U.S.C. § 3156(a)(3)................................................................................20

18 U.S.C. § 3231 ...................................................................................... xi

18 U.S.C. § 3622........................................................................................29

18 U.S.C. § 3624(c) ...................................................................29

18 U.S.C. § 3742(a)(1) ............................................................... xi

26 U.S.C. § 5861(d) ....................................................................1

28 U.S.C. § 1291 ........................................................................ xi

Ala. Code §§ 12-25-1 ................................................................25

Ala. Code § 12-25-34.2 .............................................................26

Ala. Code § 13A-1-2(8) .............................................................23

Ala. Code § 13A-5-6(a) (2019) ..................................................23

Ala. Code § 13A-5-6(4) ..............................................................37

Ala. Code § 13A-5-6(a)(4) (2019) ............................. 6, 14, 22, 23, 27, 30

Ala. Code § 15-18-8 (2019) ................................................. 23, 37

Ala. Code § 15-18-8(b) (2019) ............................................ 14, 23, 27

Ala. Code § 15-18-8(e) (2019) ..................................................24

Ala. Code § 15-18-171(6) ..........................................................24

Ala. Code § 15-18-172(a) ...........................................................24

Ala. Code § 15-18-175 ...............................................................25

Ala. Code § 15-18-175(b)(2) ......................................................29

Ala. Code § 15-18-175(c)(3) ................................................. 34, 36

Ala. Code § 15-18-175(d)(3) ......................................................25

Ala. Code § 15-22-54(e) (2019) .................................................33

Rules

11th Cir. R. 28-5 ................................................................................................ xi

11th Cir. R. 34-3(b)(3) ........................................................................................ i

Fed. R. App. P. 32(a)(5) ....................................................................................49

Fed. R. App. P. 32(a)(6) ....................................................................................49

Fed. R. App. P. 32(a)(7)(B)(i) ...........................................................................49

Fed. R. App. P. 32(a)(7)(C) ...............................................................................49

Fed. R. App. P. 32(f) ..........................................................................................49

Fed. R. App. P. 34(a)(2)(C) ................................................................................ i

U.S.S.G. § 2K2.1(a)(4)(B) .................................................................................11

Other Authorities

1968 U.S.C.C.A.N. 2112, 2202 ..........................................................................20

1986 U.S.C.C.A.N. 1327, 1349 ..........................................................................21

Black's Law Dictionary (11th ed. 2019) .............................................................20

*Presumptive and Voluntary Sentencing Standards Manual*, ALABAMA SENTENCING
    COMMISSION ..........................................................................................25, 31

## STATEMENT OF JURISDICTION

This is an appeal of the judgment of conviction in a criminal case. A jury convicted Joshua Eugene Gaines of being a felon in possession of a firearm under 18 U.S.C. § 922(g)(1). He was sentenced to a 51-month term of imprisonment. (Doc. 82 at 1-2.[1]) The district court entered its judgment on January 12, 2024. (*Id*.) Gaines timely filed his notice of appeal that same day. (Doc. 84.) The district court had jurisdiction under 18 U.S.C. § 3231. This Court has jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a)(1).

---

[1] This brief uses the format "Doc. X at Y" to refer to page Y, as paginated by the district court's electronic-filing header, of a document numbered X in the district court record. *See* 11th Cir. R. 28-5.

## STATEMENT OF THE ISSUES

I. Whether the district court abused its discretion by instructing the jury, using a modified version of the 11th Circuit Pattern Jury Instruction, that Gaines had to know that "he had previously been convicted of a felony, a crime punishable by imprisonment for more than one year" at the time he possessed the charged firearm to be convicted under § 922(g)(1).

II. Whether Gaines's Alabama conviction for receipt of stolen property in the third degree qualified as a crime punishable by "a term of imprisonment exceeding one year" for the purposes of § 922(g)(1).

III. Whether the traffic stop that led to the discovery of Gaines's firearm through a consent search violated *Rodriguez v. United States*, 575 U.S. 348 (2015).

IV. Whether § 922(g)(1) violates the Second Amendment, both facially and as applied to Gaines, who says he possessed the firearm for self-defense.

V. Whether the district court's use of acquitted conduct at sentencing violated Gaines's Fifth and Sixth Amendment rights.

## STATEMENT OF THE CASE

A grand jury indicted Gaines for being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1), and possession of an unregistered firearm, in violation of 26 U.S.C. § 5861(d). (Doc. 1.) After a jury trial, he was acquitted of the unregistered-firearm offense and convicted of the felon-in-possession offense. (Doc.

1

70.) He was sentenced to 51 months of imprisonment and 36 months of supervised release. (Doc. 82, 2-3.)

## I.   Gaines moves to dismiss the indictment on Second Amendment grounds.

Gaines moved to dismiss the indictment, citing *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (2022), and arguing that both charged statutes unlawfully burdened his Second Amendment right to possess firearms. (Doc. 14.) Gaines made a facial challenge to the statutes. (Doc. 14, at 28) ("Because the statues challenged here are not part of this Nation's history and tradition, they impose unconstitutional restrictions on the Second Amendment Right to keep and bear arms.") The district court denied the motion. (Doc. 30.)

## II.   Gaines moves to suppress the firearms.

Gaines also moved to suppress the firearm that was the basis for his felon-in-possession offense. As discussed in more detail below, Gaines was the passenger in a car that was pulled over for a traffic violation, and the driver gave consent for officers to search her car, leading to the discovery of Gaines's firearm. *See infra* Part B.1. Gaines alleged that officers unlawfully prolonged the traffic stop in violation of *Rodriguez v. United States*, 575 U.S. 348 (2015) by asking questions unrelated to the traffic mission, seeking consent for a search, and frisking Gaines and the other vehicle occupants before conducting the consent search. (Doc. 15, at 2-3.)

## A.    An evidentiary hearing is held.

An evidentiary hearing was held, and the government presented the following facts. A few months after Gaines was convicted of a felony, law enforcement discovered him in possession of a firearm during a traffic stop. (Gov. Supp. Ex. 1, at 2:24:00-2:24:16.)[2] Huntsville Police Officer Benjamin Johnson saw a vehicle leave a gas station with broken tag lights and pulled it over. (Doc. 32, at 16-19.) Officer Tyler Baker arrived on the scene to assist Johnson. (Gov. Supp. Ex. 2, at 2:12:50-2:13:37.) Gaines was sitting in the front passenger seat of the vehicle when the stop occurred. (*Id*., at 2:14:47-2:14:48.)

Johnson approached the vehicle driver and asked whether she had a driver's license. (Gov. Supp. Ex. 1, at 2:13:52-2:13:56.) She did not. (*Id*.) Johnson handed a notepad to the driver and asked all the vehicle occupants to write down their identification so that Johnson could determine if anyone could legally drive the car. (*Id*., at 2:13:57- 2:14:04.) For the next two minutes, Johnson queried the vehicle occupants and obtained their identifying information. (*Id.*, at 2:13:52-2:15:33.) He did so "[b]ecause at that point" he did not "have a valid driver for the vehicle." (Doc. 32, at 14.)

---

[2] The entire encounter was captured on officers' body worn cameras, and the footage from the cameras was admitted into evidence during the suppression hearing. Officer Johnson's camera footage was admitted as government's exhibit one. Officer Baker's footage was admitted as government's exhibit two.

3

As one person in the car wrote down his information, Johnson asked if there were any weapons in the vehicle. One of the occupants said he had a knife, and Baker got it from him. (Gov. Supp. Ex. 2, at 2:15:43-2:15:55.) Johnson asked the driver if he could search the vehicle, and she consented. (Gov. Supp. Ex. 1, at 2:15:47-2:15:49.)

Over the next three minutes, officers ordered each of the occupants out of the vehicle and frisked them.[3] (Gov. Supp. Ex. 1, at 2:16:28-2:18:55; Gov. Supp. Ex. 2, at 2:16:37-2:20:02.) Johnson frisked two of the vehicle occupants, including the driver, and then asked Baker to frisk the remaining occupants, which included Gaines, while he called for backup. (*Id.*) Johnson called for backup because the vehicle occupants outnumbered the officers (Gov. Supp. Ex. 1, at 2:17:10-2:17:22; Doc. 32 at 73-74.)

Johnson then began searching the vehicle. (Gov. Supp. Ex. 1, at 2:20:39.) While the search was underway, Baker called in the records check based on the information collected from the vehicle passengers. (Gov. Supp. Ex. 2, at 2:22:00-2:23:25.) A few minutes into the search, Johnson found a firearm in a backpack in the vehicle's backseat. (Gov. Supp. Ex. 1, at 2:24:00-2:24:16.) After Johnson found

---

[3] The magistrate judge determined that it was not clear from the video whether the driver was frisked. (Doc. 42, at 7 n.8.)

4

the firearm, Baker received word that dispatch had completed the records check. (Gov. Supp. Ex. 2, at 2:25:06-2:25:48.)

Gaines admitted to owning the firearm and that he was a felon, but he denied knowing that the firearm was in vehicle. (Gov. Supp. Ex. 1, at 2:28:30-2:30:08.) Johnson told Gaines that he found the firearm in a backpack. (*Id*., at 3:01:00-3:01:01.) Gaines said that he knew "whose stuff that [was]," and he remarked, "I'm going to beat his ass when I get out." (*Id*., at 3:01:04-3:01:11.)

### B.    The district court denies the motion to suppress.

Following the hearing, the magistrate judge entered a report and recommendation (R&R) that Gaines's motion be denied. (Doc. 42.) The magistrate judge identified "essentially three reasons" that Gaines's motion to suppress should be denied:

> First, the stop necessitated ascertainment of which of the vehicle's occupants could lawfully operate it because the driver, Riley, did not possess a driver's license. Measures to ascertain a proper driver constituted a permissible component of a traffic stop, and the time taken to delineate a proper driver encompasses most of the activities undertaken by the officers that arguably do not fall within the mission of the traffic stop.

> Second, the officers obtained consent to search the vehicle early in the stop. Obtaining such consent allowed the officers to extend the stop to conduct the consensual search.

> Lastly, Gaines did not have a legitimate expectation of privacy in the backpack so as to challenge its search, and he acceded to Riley's actual authority to consent to the search of the vehicle.

(Doc. 42, at 12-13.)

Gaines objected to the R&R; the district court overruled the objections and adopted the magistrate judge's findings. (Docs. 43 and 44.)

### III. Gaines proceeds to trial and is convicted of being a felon in possession of a firearm.

Gaines proceeded to trial. On the morning of trial, Gaines announced for the first time that he planned to argue that the predicate felony for Gaines's § 922(g)(1) charge did not legally qualify as "a crime punishable by imprisonment for a term exceeding one year." (Tr. I, at 22) (quoting 18 U.S.C. § 922(g)(1).) Gaines's predicate conviction was for receipt of stolen property in the third degree, a Class D felony under Alabama law. (Doc. 74-2, at 1.) The statutory maximum "term of imprisonment" for the felony was five years. Ala. Code § 13A-5-6(a)(4) (2019). His guideline range under Alabama's presumptive sentencing standards was 13 to 31 months.  (Doc. 72, at 4.) He received a suspended sentence of 24 months of imprisonment and was placed on probation for two years. (*Id*. at 2.)

The morning of trial, Defense counsel informed the district court there would likely not be an agreement on the definition of felony and explained they "plan[ned] to argue that under the presumptive sentencing standards this crime was not actually punishable by a year or more in prison," but did not plan to do so to the jury because the defense "agree[d] that's a legal determination for the Court." (Tr. I, at 17-22.) Instead, the defense planned to argue to the jury that Gaines had signed a form telling

6

him his previous conviction was a "non-prison" felony, and so did not know that he had been convicted of an offense punishable by more than a year of imprisonment. (*Id*.)

After the jury was impaneled and before opening statements, the defense asked the district court to restrict the government from mentioning the penalties associated with Gaines's previous conviction during its opening statement. (*Id*., at 46.) Again, the defense reiterated that "whether . . . this is a qualifying conviction is not a question of fact for the jury. It's a question of law for the Court, and the Court can decide that issue at the end of the presentation of evidence." (*Id*., at 54.).

Ultimately, the district court asked the parties to file trial briefs by noon the next day on whether a Class D felony was punishable by a term of imprisonment exceeding one year under Alabama law. (*Id*., at 57-58.) And the parties did so. (Docs. 66 and 67.) The court reserved its ruling and the trial began. Gaines raised the predicate-felony issue again when raising his Rule 29 motions and proposing jury instructions.

## A.    The defense moves for acquittal under Rule 29.

During trial, the government introduced Gaines's previous conviction and plea agreement into evidence. (Doc. 74-2.) Gaines's plea agreement, which was adopted into the sentencing order, said that the state would recommend that he be sentenced to a term of imprisonment of 24 months that would be suspended. (*Id*., at

2.) At the close of the government's case, the defense moved under Rule 29 for acquittal on both counts of the indictment. (Tr. II., at 241.) For the felon in possession count, the defense renewed its contention that Gaines's predicate was not punishable by a term of imprisonment exceeding one year. (*Id*., at 242-43.) The district court denied the motion. (*Id.*, at 249.)

The defense then put on its case. It called Gaines's lawyer from his state court case. The lawyer testified that he had advised Gaines that his conviction was a "non-prison event." (*Id.*, at 260.) If Gaines violated probation, however, the lawyer explained that he would go to prison for 24 months because of the suspended sentence. (*Id.*, at 266.)

At the close of evidence, the defense renewed its Rule 29 motion on the felon-in-possession count after the close of evidence. (Tr. II., at 299.) The district court denied it:

> All right. So I reviewed the briefs and read all the cases regarding our motion as to whether or not the defendant can be properly charged with 922(g) based upon the fact that he is charged with a Class D felony in Alabama and those three statutes that go with it. I overrule the motion. I accept the government's reasoning. And I'm going to get a fairly detailed memo out on that within the next couple of days.[4]
>
> But I will say this: Number one, I think those cases in the Tenth, Fourth, and Ninth Circuits are persuasive and well written. And if we did not have the *Gardner* case in the Eleventh Circuit, I probably would be going your way. But because the Eleventh Circuit in what I might call

---

[4] The district court ultimately never issued a memorandum opinion on its decision to deny the Rule 29 motion.

a sister case on their interpretation of the ACCA has said we are going to take a categorical approach to looking at this matter. That is the closest reasoning I have in my circuit, and I think I'm bound to follow it.

(Tr. III., at 308.)

The defense also renewed its *Bruen* motion, which the district court denied.

(*Id.*, at 314-15.)

### B.    The district court instructs the jury.

At the charge conference, the government originally proposed the Eleventh Circuit's pattern jury instruction for the felon-in-possession count. (*Id.*, at 315.) The defense objected to the inclusion of the word "felony" because the word was not in the statute. (*Id.* at 315, 328.) The district court elected to keep the term. (*Id.*, at 328.) It did, however, decide to ensure that the phrase "a crime punishable by imprisonment for more than one year" was also included in the explanation of the third element of the offense concerning what the defendant had to know about his status to be convicted.[5] (*Id.*)

---

[5] In this way, the district court's instruction deviated from the pattern jury instruction. The pattern instruction does not repeat the definition of "felony" from the second element after the use of "felony" in the third element. The pattern instruction on the third element reads: "at the time the Defendant possessed the firearm or ammunition, the Defendant knew [he][she] had previously been convicted of a felony." Judicial Council of the United States Eleventh Judicial Circuit, Criminal Pattern Jury Instructions O34.6, (March 2022 ed.) ("11th Cir. *Rehaif* Pattern Jury Instruction").

When instructing the jury on what the indictment charged, the district court explained that the government had alleged that Gaines knew he had been convicted of a crime punishable by a term of imprisonment exceeding one year at the time he possessed the firearm in question:

> Count One charges that the defendant knowing he had previously been convicted of a crime punishable by imprisonment for a term exceeding one year, a felony, knowingly possessed a firearm, that being a Marlin Glenfield Model 60 .22 caliber rifle, bearing serial number 27264689. And the firearm was in and affecting interstate and foreign commerce.

(*Id.*, at 371.)

When charging the jury on § 922(g)(1), the district court repeated "a crime punishable by imprisonment for more than one year" after each time it used the term "felony"—three times in total:

> It's a federal crime for anyone who's been convicted of a felony offense -- a crime punishable by imprisonment for more than one year -- to possess a firearm in or affecting interstate or foreign commerce.
>
> The defendant in this case can only be found guilty to this crime only if all the following facts are proved beyond a reasonable doubt: One, the defendant knowingly possessed a firearm in or affecting interstate or foreign commerce; two, before possessing the firearm, the defendant had been convicted of a felony, a crime punishable by imprisonment for more than one year; and three, at the time the defendant possessed the firearm, the defendant knew he had previously been convicted of a felony, a crime punishable by imprisonment for more than one year.

(*Id.*, at 372-73.) Neither party objected to the instructions as given. (*Id.* at 378-79.)

In closing argument, the government pointed to Gaines's plea agreement and the fact that he had been sentenced to a suspended prison term of 24 months as

evidence that, when he possessed the firearm, he knew that he had been convicted of a crime punishable by more than a year of imprisonment. (*Id*., at 336.) The defense argued that Gaines only understood that he had been convicted of "a non-prison felony," and that the suspended sentence "didn't matter" to him because he was not going to prison. (*Id*., at 345-47.)

The jury found Gaines guilty of possession of a firearm by a prohibited person and acquitted him of possessing an unregistered firearm. (*Id*., at 385-86; Doc. 70.)

### C.    Gaines is sentenced.

Gaines faced a statutory maximum of 10 years imprisonment and a U.S. Sentencing Guidelines imprisonment range of 41 to 51 months. (Doc. 81, at ¶¶ 76 - 77.) His range reflected a higher base offense level (20) under U.S.S.G. § 2K2.1(a)(4)(B) because he was a prohibited person at the time he possessed the firearm, and the firearm was a registerable weapon under the National Firearms Act. (Doc. 81, at ¶ 17.) Gaines objected that the PSR unconstitutionally used acquitted conduct to increase his guideline range. (Doc. 78.) The district court overruled the objection, found that the firearm Gaines possessed was registerable under the National Firearms Act, and sentenced him to 51 months' imprisonment. (Doc. 87, at 5, 13, 16.)

11

## IV.   Standards of Review

I.      The "legal correctness of a jury instruction" is reviewed de novo. *United States v. Isnadin*, 742 F.3d 1278, 1296 (11th Cir. 2014) But "questions of phrasing . . . are reviewed for an abuse of discretion." *Id*. Moreover, the challenged instruction "is reviewed as part of the entire jury charge, in light of the indictment, evidence presented and argument of counsel to determine whether the jury was misled and whether the jury understood the issues." *Id*. (quoting *United States v. Lopez*, 590 F.3d 1238, 1248 (11th Cir. 2009)). A conviction will only be reversed when "the issues of law were presented inaccurately, or the charge improperly guided the jury in such a substantial way as to violate due process." *Isnadin*, 742 F.3d at 1278 (quoting U*nited States v. Prather*, 205 F.3d 1265, 1270 (11th Cir. 2000)).

II.     The sufficiency of the evidence is reviewed de novo, "drawing all reasonable inferences and credibility choices in favor of the jury's verdict." *United States v. Trujillo*, 146 F.3d 838, 845 (11th Cir. 1998). [6]

---

[6] Gaines frames this issue in terms of the sufficiency of the evidence. But the defense acknowledged it was a purely legal question. The government thinks it is best understood as a challenge to the sufficiency of the indictment and whether it states an offense. *See, e.g.*, *United States v. Braun*, 453 F. Supp. 3d 883, 886 (M.D. La. 2020) ("[W]hether a prior conviction qualifies as a 'crime punishable by imprisonment for a term exceeding one year,' as that phrase is defined in § 921(a)(20), is a question of law appropriate for consideration by the court on a motion to dismiss."); *United States v. Harris*, No. 1:17-CR-71-TH, 2018 WL 6498715, at *2 (E.D. Tex. Dec. 11, 2018) ("[W]hether a prior conviction qualifies

III.    This Court applies a "mixed standard" when reviewing a district court's denial of a motion to suppress. *United States v. Grushko*, 50 F.4th 1, 10 (11th Cir. 2022). Factual findings are reviewed for clear error, while legal conclusions are reviewed de novo. *Id*.

IV. and V. Questions of constitutional law are subject to de novo review. *United States v. Paige*, 604 F.3d 1268, 1274 (11th Cir. 2010).

## SUMMARY OF ARGUMENT

I.    The district court properly exercised its discretion in telling the jury that, to convict Gaines of violating § 922(g)(1), it had to find beyond a reasonable doubt that, at the time he possessed the charged firearm, he knew he had been previously convicted of "a felony, a crime punishable by imprisonment for more than one year." Gaines's only objection to the instruction is that the term "felony" somehow excused the jury from finding that Gaines knew his prior offense was punishable by more than one year of imprisonment. Yet, a felony, traditionally understood, is a crime punishable by more than a year of imprisonment. And the district court made that understanding explicit because, every time the court used "felony" in its instruction, it immediately defined the term as a crime punishable by imprisonment for more than one year. Therefore, no reasonable juror could convict

_____

as a 'crime punishable by imprisonment for a term exceeding one year' as that phrase is defined in § 921(a)(20) is a question of law appropriate for consideration by the court on a motion to dismiss.").

Gaines without finding that Gaines knew he faced more than a year of imprisonment for his predicate offense.

II.    Gaines's previous conviction for receipt of stolen property in the third degree satisfied Section 922(g)(1)'s requirement of a crime punishable by "a term of imprisonment" exceeding one year. The offense is a Class D felony, which requires a "definite term of imprisonment" that is "not more than five years or less than one year and one day." *See* Ala. Code § 13A-5-6(a)(4) (2019). First-time offenders, as Gaines was at the time, are ineligible for incarceration but can be placed "in a consenting community corrections program . . . for a period not exceeding two years . . . ." Ala. Code § 15-18-8(b) (2019). Gaines contends that the prohibition on incarceration meant that he did not face any term of "imprisonment." But both Alabama law and federal law define "imprisonment" to include forms of confinement other than incarceration, such as a community corrections sentence. Alternatively, Gaines himself received a term of imprisonment of more than one year, although it was suspended, and certain offenders may be sentenced to incarceration for the same crime.

III.    The district court correctly determined that *Rodriguez v. United States*, 575 U.S. 348 (2015), did not require suppression of Gaines's firearm. Officers did not unlawfully prolong the traffic stop of the vehicle, in which Gaines was a passenger, before the driver gave consent to search her vehicle. Gaines does not

14

challenge the district court's findings on those issues. Instead, he contends that the consent search should be treated as part of the initial traffic stop, and thus the search itself violated *Rodriguez* because it was not related to the initial traffic mission and prolonged the stop. Yet nothing in *Rodriguez* requires law-enforcement officers to ignore a driver's validly obtained consent in this way. Gaines has not attempted to show that the consent was the product of an unlawfully extended traffic stop, and therefore, the district court's suppression ruling should be affirmed.

IV.    Gaines's claim that § 922(g)(1) unlawfully burdens his Second Amendment rights was rejected in *United States v. Rozier*, 598 F.3d 768 (11th Cir. 2010), and *United States v. Dubois*, 94 F.4th 1284 (11th Cir. 2024), regardless of whether it is a facial or an as-applied challenge to the statute.

V.    This Court has repeatedly held that it does not violate a defendant's constitutional rights for a district court to use acquitted conduct at a sentencing hearing if it finds by a preponderance of evidence that the alleged conduct occurred.

## ARGUMENT

### I.    The district court did not abuse its discretion by using "felony" to refer to "a crime punishable by imprisonment for a term exceeding one year" in its jury instructions.

To obtain a conviction under 18 U.S.C. § 922(g)(1), the government must prove that, at the time of his firearm possession, the defendant knew that he had been convicted of "a crime punishable by imprisonment for a term exceeding one year."

18 U.S.C. § 922(g)(1); *see also Rehaif v. United States*, 139 S. Ct. 2191, 2197 (2019). To convey this element, the district court instructed the jury that, to convict, it must find that Gaines "knew he had previously been convicted of a *felony*, a crime punishable by imprisonment for more than one year." (Tr. III, at 372-73) (emphasis added.) This was a version of this Court's pattern jury instruction that "the Defendant knew [he][she] had previously been convicted of a *felony*," 11th Cir. *Rehaif* Pattern Jury Instruction (emphasis added), that was modified to respond to Gaines's request that the instruction make clear that he had to know he faced more than a year of imprisonment. (Tr. III, at 318.)

Nevertheless, Gaines contends that the inclusion of the word "felony" may have confused the jury about the *mens rea* requirement. (Gaines Br., 22-26.) The plain text of the instruction, however, belies this concern. It makes clear that Gaines could not have been convicted if he did not know that he belonged to the relevant class of prohibited persons—those convicted of crimes punishable by more than a year of imprisonment. The use of "felony," a word traditionally understood to refer to such crimes, only underscored the point and did not amount to an abuse of discretion. *See, e.g.*, *United States v. Browne*, 505 F.3d 1229, 1276 (11th Cir. 2007) ("we review the district court's refusal to accept [the defendant's] requested modification to the wording of the instruction for an abuse of discretion").

16

**A.    The jury could have only convicted Gaines if it found that he knew he had been convicted of a crime punishable by more than a year of imprisonment.**

The district court's jury instruction on what the government was required to prove beyond a reasonable doubt to convict Gaines "substantially covered" the point Gaines wanted to make and thus did not create "a substantial and eradicable doubt as to whether the jury was properly guided in its deliberations." *Id*. Considering the entire charge and the trial itself, there is no risk that the jury was misled by the instruction's use of "felony." *See Isnadin*, 742 F.3d at 1296 (explaining that a challenged jury instruction is reviewed considering the whole jury charge). Every time the district court uttered the word "felony" in its jury charge, it immediately defined the term as a "crime punishable by more than a year imprisonment." (Tr. III, at 371-73.)

Gaines argues that, "[r]ead in the ordinary way," the instruction meant that Gaines could be convicted as long as he knew his prior offense was labeled a "felony," regardless of what he knew about the accompanying punishment. (Gaines Br., at 25). Gaines seeks to divorce the term "felony" from the definition that immediately follows in the instruction. This is not reading the instruction in the "ordinary way." The phrase "a crime punishable by imprisonment for more than one year" defines "felony." It explains what Gaines actually had to know. *Cf.* Gaines Br., at 25 (acknowledging that the phrase is "an adjectival clause" that "clarif[ies] the

17

meaning of 'felony'"). Nothing in the instruction states that an offense is a felony if labeled as such by state law. The jury could convict Gaines only if it found that he knew he had been convicted of a crime punishable by more than a year of imprisonment.

*United States v. Grigsby*, 111 F.3d 806, 821 (11th Cir. 1997), cited by Gaines, is not a comparable example, and merely illustrates by contrast why no error occurred here. In that case, the defendants were charged with violating several environmental protection statutes, including the African Elephant Conservation Act. *Id*. at 812. The district court charged the jury that it could convict the defendants if they "either knowingly or fraudulently imported [ivory] into the United States." *Id*. at 817. The instruction was defective because it was a general intent rather than a specific intent instruction, which the statute required. *Id*. at 822. It was also misleading. "Fraudulently" was not in the statue, and injecting fraud into the instruction was confusing because the only relevant question was whether the defendants "*specifically knew that they were violating the AECA* in moving the ivory tusks into the United States." *Id*. Unlike "felony," "fraudulently" had no connection to the statute, and its inclusion contradicted what the statute itself required for the offense's mens rea.

The same is not true here. The felony concept is imbedded in the statute. And rather that injecting an erroneous alternative mens rea, the use of the defined term

18

"felony" did not alter the statutory language. Using "felony" as shorthand for "a crime punishable by imprisonment for more than one year" is not a misstatement of law, and it did not mislead the jury. The district court did not abuse its discretion by including the term in the offense instruction.

**B.    In adopting § 922(g)(1), Congress intended to prohibit persons convicted of offenses meeting the common law definition of felony from possessing firearms.**

While the plain text of the instruction is more than enough to reject Gaines's challenge, the legislative history of § 922(g)(1) further supports the district court's instruction. *See United States v. Focia*, 869 F.3d 1269, 1281 (11th Cir. 2017) (considering "statutory language and congressional intent" when reviewing challenge to jury instruction); *see United States v. Donruss Co.*, 393 U.S. 297, 310 (1969) (Harlan, J., concurring in part) ("Our task is to decide what jury instruction with respect to the definition of 'purpose' comports best with Congress' intent as revealed by this statutory language and the underlying legislative history.").

The statute makes it unlawful for a person "who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year" to possess a firearm. 18 U.S.C. § 922(g)(1). Certain antitrust and competition crimes as well as state misdemeanors punishable by a term of imprisonment of two years or less are exempted from the definition of a "crime punishable by imprisonment for a term exceeding one year." 18 U.S.C. § 921(20).

19

Working together, these two provisions capture the common law understanding of a felony offense. Traditionally understood, a "felony" is "[a] serious crime usu[ally] punishable by imprisonment for more than one year or by death." FELONY, Black's Law Dictionary (11th ed. 2019); *Carachuri-Rosendo v. Holder*, 560 U.S. 563, 574 (2010) ("A 'felony,' we have come to understand, is a serious crime usually punishable by imprisonment for more than one year or by death.") (internal quotations omitted). Federal law embodies this understanding as well. 18 U.S.C. § 3156(a)(3)("[T]he term 'felony' means an offense punishable by a maximum term of imprisonment of more than one year.").

Congress intended § 922(g)(1) to prohibit felons from possessing firearms. The Senate Report on the Omnibus Crime Control and Safe Streets Act of 1968 discussed the definition of what constitutes a "crime punishable by imprisonment for a term exceeding one year," currently codified at § 921(a)(20). The report explains that this "paragraph enumerates certain types of crimes which are excluded from the felony criteria." Senate Report No. 90-1097, 1968 U.S.C.C.A.N. 2112, 2202. This shows that Congress used the phrase "punishable by imprisonment for a term exceeding one year" to capture felony offenses.

Later legislative history confirms this understanding as well. The modern language of § 922(g)(1) was adopted in the Firearms Owners Protection Act of 1986. The section-by-section analysis from the committee report on that legislation shows

20

that Congress intended to disarm individuals convicted of a "felony" offense: "Persons are now unqualified from receiving, possessing or transporting firearms in interstate or foreign commerce or firearms which have been shipped or transported in interstate or foreign commerce if they are or have been . . . under indictment for or convicted of a felony." H.R. Rep. 99-495, 23, 1986 U.S.C.C.A.N. 1327, 1349.

When the district court used the shorthand "felony" for "crime punishable by imprisonment for a term exceeding one year," it was merely articulating the traditional understanding, federal law's understanding, and Congress' intent in adopting the statute, of what a crime punishable by more than a year imprisonment means. And, as previously shown, there was no risk that inclusion of the word rendered the instruction misleading because the district court specifically defined the term on multiple occasions.

## II.    Gaines's previous felony conviction was punishable by a term of imprisonment of more than one year.

Gaines's predicate conviction was punishable by more than a year imprisonment. [7]   Receipt of stolen property in the third degree is a Class D felony

---

[7] Gaines states there was "ample" evidence that he did not know that his prior offense was punishable by a term of imprisonment exceeding one year, for the purposes of showing that the court's jury instruction caused him prejudice. (Gaines Br., at 26-28.) He does not, however, press this argument in the context of his evidence-sufficiency challenge. Any such argument is therefore waived. *United States v. Nealy*, 232 F.3d 825, 830–31 (11th Cir. 2000) (finding that defendant abandoned issue by not raising it in initial brief).

under Alabama law. Class D felonies carry a statutory maximum "term of imprisonment" of five years. *See* Ala. Code § 13A-5-6(a)(4) (2019). Gaines does not dispute that he could have received a community corrections sentence for his conviction. (Gaines Br., 34.) And an Alabama community corrections sentence is a term of imprisonment under § 922(g)(1).

Even if a community corrections sentence were not a term of imprisonment, the district court should still be affirmed for two independent reasons. First, Gaines could have received a community corrections sentence and a suspended sentence of imprisonment, which would be served through incarceration upon revocation, of more than a year. If revoked, Gaines could have faced that sentence, which shows that his previous conviction is punishable by a term of imprisonment exceeding one year. Second, certain individuals who commit the same crime are directly subject to imprisonment for more than a year. Although Gaines did not have the necessary criminal history for such a sentence, the relevant question is not whether he faced such a sentence, but rather whether the offense of which he was convicted can be punished with such a sentence. Because it can, receipt of stolen property in the third degree qualifies as a predicate felony under § 922(g)(1).

### A.     The Statutory Scheme for Class D Felonies

The statutory punishments for Gaines's prior offense reflect the interplay of three bodies of law: the statutory imprisonment range for Class D felonies, the Alabama Split Sentencing Act, and the state's presumptive guidelines scheme.

First, under Alabama law, a felony is "[a]n offense for which a sentence to a term of imprisonment in excess of one year is authorized . . . ." Ala. Code § 13A-1-2(8). Any felony sentence is required to "be for a definite term of imprisonment," even if that term is ultimately suspended. Ala. Code § 13A-5-6(a) (2019). For a Class D felony, like Gaines's predicate conviction, Alabama law authorizes a sentence of imprisonment of "not more than five years or less than one year and one day." Ala. Code § 13A-5-6(a)(4) (2019).

Second, at the time of Gaines's predicate conviction, another statute limited sentencing options for Class D felonies. Ala. Code § 15-18-8 (2019).[8] The Alabama Split Sentencing Act required that a defendant convicted of a Class D felony who is not sentenced to "probation, drug court, or a pretrial diversion program . . . and receives a sentence of not more than 15 years" serve his sentence "in a consenting community corrections program . . . for a period not exceeding two years . . . ." Ala.

---

[8] This statute was amended effective July 1, 2023. It no longer requires that Class D offenses receive community corrections sentences.

Code § 15-18-8(b) (2019).[9] The remainder of the sentence was required to be suspended and the defendant placed on probation for a period not to exceed three years. *Id*. If, however, a defendant being sentenced for a Class D felony had been previously convicted of three or more felonies or two or more Class A or Class B felonies, these limitations did not apply, and the defendant could be sentenced as if he had committed a Class C felony, meaning he could be required to serve his sentence of imprisonment in a penitentiary. *Id*.

Alabama law defines a "Community Punishment and Corrections Program" as "[a]ny program designed as an alternative to incarceration . . . including, but not limited to confinement, work release, day reporting, home detention, restitution programs, community service, education and intervention programs, and substance abuse programs." Ala. Code § 15-18-171(6). The Alabama Community Punishment and Corrections Act (ACPCA) empowers a county, or a collection of counties working together, to establish a community corrections program. Ala. Code § 15-18-172(a).

Under ACPCA, when sentencing a defendant to community corrections, the court has the "authority to set the duration of the sentence for the offense committed to any period of time up to the maximum sentence within the appropriate sentence

---

[9] If no community corrections program was available, the defendant could be sentenced to "high-intensity probation under the supervision of the Board of Pardons and Paroles in lieu of community corrections." Ala. Code § 15-18-8(e) (2019).

24

range for the particular offense." Ala. Code § 15-18-175. Thus, the maximum term of the sentence to be served in community corrections is coextensive with the statutory range of punishment set by Alabama law for the applicable felony.

Community corrections is a form of confinement. Community corrections participants who fail to abide by the terms of the program's restrictions on their movement can be charged with escape under Alabama law:

> The willful failure of an inmate to remain within the extended limits of his or her confinement or to return to the place of confinement within the time prescribed shall be deemed an escape from a state penal institution in the case of a state inmate and an escape from the custody of the sheriff in the case of a county inmate and shall be punishable accordingly.

Ala. Code § 15-18-175(d)(3)e; *see also State v. Bethel*, 55 So. 3d 377, 379 (Ala. Crim. App. 2010) ("[A]n inmate taking part in the community-corrections program may be charged with first-degree escape under the appropriate circumstances.").

Finally, Alabama has adopted Presumptive and Voluntary Sentencing Guidelines. *See* Ala. Code §§ 12-25-1, *et seq.* The sentencing standards are "[d]esigned to mimic the two decisions in criminal sentencing – where and how the sentence is served, prison or non-prison (disposition), and the length of the sentence (duration)." *Presumptive and Voluntary Sentencing Standards Manual*, ALABAMA

25

SENTENCING COMMISSION, at 17.[10] "A sentence to community corrections is considered to conform to either a 'prison' or 'non-prison' recommendation." *Id*. at 29.

Alabama's sentencing guidelines include aggravating and mitigating factors that allow a court to depart from the presumptive sentencing range. Ala. Code § 12-25-34.2. "A sentence above the presumptive range must be based on an aggravating factor that has been proved to a jury beyond a reasonable doubt or admitted by the defendant." *United States v. Gardner*, 34 F.4th 1283, 1287 (11th Cir. 2022).

> **B.    Gaines's Class D felony was punishable by more than a year of imprisonment.**

1.    Gaines's Class D felony was "a crime punishable by imprisonment for a term exceeding one year." 18 U.S.C. § 922(g)(1). "[W]hat constitutes a conviction of such a crime shall be determined in accordance with the law of the jurisdiction in which the proceedings were held" 18 U.S.C. § 921(20)(B); *see also United States v. Nix*, 438 F.3d 1284, 1285 (11th Cir. 2006) ("The only limitation on predicate convictions contained in § 922(g)(1) itself is that they must be 'punishable by imprisonment for a term exceeding one year,' and it is that condition which § 921(a)(20) provides 'shall be determined in accordance with the law of the

---

[10]    The manual is available online at https://sentencingcommission.alacourt.gov/media/1089/2019-presumptive-manual.pdf.

jurisdiction in which the proceedings were held.'"). Both state law and federal law make clear that the term "imprisonment" covers forms of confinement beyond simple incarceration, and, in particular, includes the kind of community-corrections sentences that Gaines faced for his Class D felony of stolen property in the third degree.

A Class D felony requires a "definite term of imprisonment" that is "not more than five years or less than one year and one day." *See* Ala. Code § 13A-5-6(a)(4) (2019). *See also Gardner*, 34 F.4th at 1287 (recognizing that the "statutory maximum prison sentence" for an Alabama offense "was governed by the felony offense classification" set forth in Ala. Code § 13A-5-6) (cited by district court). Thus, as a case that Gaines relies on makes clear (Gaines Br., 31), he faced a "maximum statutory term of *imprisonment*" of five years. *See Laakonen v. State*, 293 So.3d 439, 443-446 (Ala. Crim. App. 2019) (describing penalties applicable to defendant's Class D felony) (emphasis added).

To the extent that the Alabama Split Sentencing Act placed further limitations on Gaines's punishment, those limitations do not challenge the ultimate conclusion that his offense remained punishable by more than a year of imprisonment. He still faced the possibility of serving a sentence "in a consenting community corrections program . . . for a period not exceeding two years . . . ." Ala. Code § 15-18-8(b) (2019). Alabama courts make clear that a term of imprisonment can be served

*through* community corrections. *See, e.g.*, *Ex parte Hill*, 71 So. 3d 3, 8 (Ala. 2009) ("[T]he trial court . . . sentenced Hill to 20 years' imprisonment, to be served in the community-corrections program."); *Reese v. State*, 97 So. 3d 184, 185 (Ala. Crim. App. 2012) ("Reese pleaded guilty to first-degree unlawful possession of marijuana . . . and was sentenced to 15 years' imprisonment to be served in the Houston County Community Corrections."); *Heupel v. State*, 113 So. 3d 695, 696 (Ala. Crim. App. 2012) ("Heupel was sentenced, pursuant to a plea agreement, to 10 years' imprisonment, to be served through Franklin County Community Corrections . . . ."). For example, in *Laakonen*, the Alabama Court of Criminal Appeals found reversible error where the defendant was not advised at his guilty-plea proceedings of the proper statutory maximum term of imprisonment for his Class D felony, even though he could serve only a community corrections sentence. *See* 293 So. 3d at 444–47.

Alabama law does not treat a penitentiary sentence and a community corrections sentence as qualitatively different punishments. *See State v. Friedley*, 291 So. 3d 1211 (Ala. 2018). Rather, they are different means of serving the same sentence. In *Friedley*, the defendant was convicted of manslaughter and assault in the first degree in 2007. *Id.* at 1213. In 2017, the defendant filed a motion for transfer to community corrections. *Id.* The trial court granted the motion, and the state filed a mandamus petition with the Supreme Court, arguing that the defendant was an

excluded offender under Ala. Code § 15-18-175(b)(2), which prohibited defendants convicted of certain offenses from participating in community corrections programs. *Id.* at 1214. That section was amended after the defendant was sentenced to add manslaughter as an excluded offense. *Id.* at 1215, n.3.

The defendant argued that the application of the code section to him violated the Ex Post Facto Clause. The Alabama Supreme Court held that "because the addition of manslaughter within the excluded felonies subsequent to Friedley's sentence does not increase his punishment, it does not violate the Ex Post Facto Clause." *Id.* at 1215. A penitentiary sentence and a community corrections sentence are both methods of serving a term of imprisonment. Under Alabama law, incarceration and imprisonment are not synonymous.

In this respect, Alabama law is consistent with federal law. The Bureau of Prisons is authorized to permit federal prisoners to serve a portion of their terms of imprisonment in a community correction facility or home confinement. 18 U.S.C. § 3624(c). Federal law also allows a term of imprisonment to be served through community work release and educational programs. 18 U.S.C. § 3622. "This kind of controlled exposure to the community is entirely consistent with the meaning of imprisonment under the statute." *Goldings v. Winn*, 383 F.3d 17, 27 (1st Cir. 2004); *see also Iacaboni v. United States*, 251 F. Supp. 2d 1015, 1029 (D. Mass. 2003)

("[T]he notion of 'imprisonment' clearly encompasses conditions of confinement substantially less restrictive than community confinement.").

2.     Despite the authorities above, Gaines renews his contention that community corrections was defined as an "alternative to incarceration," meaning that "community corrections is not imprisonment." (Doc. 67, at 5.)

First, he relies on the fact that the presumptive sentencing standards applicable to him provided only for a "non-prison" sentence. Gaines Br., 33-34. At the outset, this objection is invalid because, as discussed below, § 922(g)(1) requires a look at the sentences associated with the offense, not the sentences applicable in a particular instance. *See infra* Part D. Yet, even under a defendant-specific approach, Gaines's objection fails because the use of the term "non-prison" in the presumptive sentencing standards is not the opposite of "imprisonment." As *Laakonen* explained, "[a] sentence under the presumptive standards for a Class D felony" must fall within the terms of imprisonment provided under Ala. Code § 13A-5-6(a)(4). 293 So. 3d at 446 (citing Ala. Code § 12-25-33). Thus, the presumptive sentencing standards do not have the authority to excuse a defendant from imprisonment altogether for a Class D felony.

Instead, in the context of the presumptive sentencing standards, "a 'prison' recommendation . . . mean[s] that the defendant will be serving his sentence in a facility operated by the Department of Corrections" and "a 'non-prison'

recommendation . . . mean[s] that the defendant will not be serving his sentence in a facility operated by the Department of Corrections." *Mosley v. State*, 187 So. 3d 1194, 1203 (Ala. Crim. App. 2015). Indeed, community corrections sentences can be classified as either "prison" or "non-prison" sentences under the presumptive sentencing standards depending on the authority administering the program. *Presumptive and Voluntary Sentencing Standards Manual*, at 29. In either instance, though, the sentence is considered "imprisonment."

Second, Gaines cites out-of-circuit authorities for support, but they are all distinguishable because they involve probation, not community corrections. (Gaines Br., 38-39.) Under the Kansas sentencing guidelines at issue in *Hisey*, the state court was required to sentence the defendant to probation. *United States v. Hisey*, 12 F.4th 1231, 1234–35 (10th Cir. 2021) ("If a defendant meets these requirements, the sentencing court must put the defendant on probation and require drug treatment instead of prison time."). *United States v. McAdory*, 935 F.3d 838 (9th Cir. 2019), another case cited by Gaines, is also distinguishable. In *McAdory*, the defendant faced actual jail time, but under Washington's mandatory sentencing guidelines, the most serious offense only carried a range of actual confinement of up to 90 days. *Id.* at 841.

In contrast, if a state intends to include alternative sentencing arrangements as part of a term of imprisonment, then that portion of the sentence still counts towards

determining whether the defendant was sentenced to a term of imprisonment exceeding one year for purposes of § 922(g)(1). *See United States v. Barlow*, 811 F.3d 133, 136 (4th Cir. 2015). In *Barlow*, the defendant argued that because "state law require[d] his release on post-release supervision nine months prior to the expiration of his maximum sentence . . . none of [his] convictions exposed him to a term of imprisonment of more than one year." *Id*. at 136. The Fourth Circuit rejected that argument because "the North Carolina legislature clearly intended to include post-release supervision as part of a felon's term of imprisonment." *Id.* at 14. And they did so despite the fact "time spent on federal supervised release unambiguously does not constitute part of the term of imprisonment." *Id.* at 138.[11]

### C.  Gaines's reliance on the statutory limitation on incarceration for probation revocation sentences is misplaced.

In addition, Gaines faced the possibility of a suspended sentence that could result in more than a year of incarceration. This is an alternative basis to conclude his offense was punishable by more than a year of imprisonment. *See Alabama v.*

---

[11] Notably, the Fourth Circuit follows the approach Gaines proposes regarding determining what constitutes a crime punishable by a term of imprisonment exceeding one year. The Fourth Circuit has determined that "an individual is not prohibited from possessing a firearm unless he could have received a sentence of more than one year for at least one of his prior convictions." *Miller v. United States*, 735 F.3d 141, 145 (4th Cir. 2013). Previously, it had held that "if a hypothetical defendant charged with the same crime could have received more than one year in prison under [the applicable state] law, the crime was a felony in federal court." *Id*.

*Shelton*, 535 U.S. 654, 662 (2002) ("A suspended sentence is a prison term imposed for the offense of conviction.").

Gaines argues that, despite being subject to up to a 31-month suspended sentence of imprisonment under the presumptive guidelines, "the most he could have served in prison was a little over ten months" because of a statute that limits the sentence for a defendant convicted of a Class D felony whose probation is revoked to "two years or one-third of the original suspended prison sentence, whichever is less." (Gaines Br., at 34-35) (citing Ala. Code § 15-22-54(e) (2019)).[12] Thus, Gaines contends that at the time he "was convicted and sentenced for receiving stolen property, there is no circumstance under which he could have been punished with more than a year of imprisonment." (Gaines Br., at 34-35.) He relies on Ala. Code § 15-22-54(e) (2019), which limits the period of incarceration for a person originally convicted of a Class D felony who has had his or her *probation* revoked. But it does not limit the revocation of a *community corrections* sentence and the imposition of a previously suspended term of imprisonment to be served through incarceration. For instance, Gaines could have received a high-end of the guideline sentence (31 months) satisfied by one year of community corrections with the remainder of the

---

[12] Gaines does not challenge that a suspended sentence could constitute a term of imprisonment. (Gaines Br., at 34-35.).

sentence suspended. This would have been a lawful sentence for a Class D felony under the sentencing scheme in effect at the time of Gaines's conviction.

Alabama law does require a revocation hearing for a community corrections sentence to "apply the same due process safeguards as a probation revocation proceeding." Ala. Code § 15-18-175(c)(3). Many Alabama cases discuss community corrections revocations being handled like probation revocations. *See, e.g.*, *Ex parte Hill*, 71 So. 3d 3, 8 (Ala. 2009) ("We first note that the revocation of a sentence served under a community-corrections program is treated the same as a probation revocation."). But these comments are always in the context of the procedure used for the proceedings. *See id.* at 9 ("We hereinafter sometimes in our discussion of the due-process issue presented here make reference to probationers and probation-revocation proceedings.").

The provision cited by Gaines as a limitation on the incarceration that can be served on a suspended sentence following a probation revocation for a Class D offender is not a due process provision. It deals with sentencing, not a revocation hearing's procedural safeguards. *Cf. Allen v. State*, 285 So. 3d 864, 869 (Ala. Crim. App. 2019) (reversing revocations of community corrections sentence because record did not indicate that meaningful hearing had occurred); *Corbitt v. State*, 369 So. 3d 682, 685 (Ala. Crim. App. 2022) (revocation of community corrections

sentence may not be solely based on hearsay). Thus, it has no application to revocation of a community corrections sentence.

Alabama courts have held that the substantive sentencing requirements of a probation revocation do not apply to revocation of a community corrections sentence. *See Ballard v. State*, 85 So. 3d 485, 486 (Ala. Crim. App. 2011). In 2010, Alabama limited incarceration for technical probation violations. *Id*. It also gave offenders who were currently incarcerated for such violations the opportunity to be resentenced. *Id*. In *Ballard*, the defendant petitioned for resentencing. But the Alabama Court of Appeals held that he was not an eligible offender because he was serving a split sentence in community corrections and not a term of probation. *Id*. at 486–87. The Court explained that "[a]lthough the revocation of a sentence being served under a community-corrections program is treated the same as a probation revocation . . . serving a term of probation and serving in a community-corrections program as part of a split sentence are different." *Id*. at 486. Thus, the defendant could not take advantage of the substantive sentencing benefit being offered to defendants who had terms of probation revoked.

The same is true here. A Class D felony was punishable by up to a two-year community corrections sentence, with the remaining portion of the sentenced called for by the presumptive guidelines suspended. Upon revocation of that community corrections sentence, a defendant would face incarceration for the suspended term,

35

which would be day-for-day. Alabama's community correction statue explicitly authorizes a court to "revoke the community punishment sentence and impose the sentence that was suspended at the original hearing or any lesser sentence . . . ." Ala. Code § 15-18-175(c)(3). That sentence could have been for more than a year of incarceration.

### D.    A defendant can receive a sentence of incarceration of more than one year for a Class D felony under Alabama law.

Finally, as an alternative argument, even if the range of punishments that Gaines himself faced failed to qualify as "imprisonment," his conviction may be affirmed simply on the basis that his Class D felony itself carried a statutory maximum of five years. The plain text of § 922(g)(1) calls for an offense-specific, not a defendant-specific, analysis of what constitutes a crime punishable by a term of imprisonment exceeding one year. Because a defendant convicted of receipt of stolen property in the third degree can be sentenced to more than a year in the penitentiary—a placement that unquestionably constitutes imprisonment—Gaines's previous conviction is a predicate felony under § 922(g)(1).

"Drawing on the 'commonsense meaning of the term 'punishable,'' courts have generally construed Congress' use of the phrase 'punishable by' in section 922(g)(1) to refer to 'any punishment capable of being imposed.'" *Baginski v. Lynch*, 229 F. Supp. 3d 48, 53 (D.D.C. 2017) (quoting *Schrader v. Holder*, 704 F.3d 980, 986 (D.C. Cir. 2013)). The plain text of § 922(g)(1) compels this result. *See United*

36

*States v. Dawson*, 64 F.4th 1227, 1236 (11th Cir. 2023) ("The starting point for statutory interpretation is the language of the statute."). The statue prohibits a person "who has been convicted . . . of . . . a crime punishable by imprisonment for a term exceeding one year" from shipping, receiving, or possessing a firearm. 18 U.S.C. § 922(g)(1). The adjective "punishable" modifies "crime." The class of prohibited persons is not those whose *convictions* were punishable by a term of imprisonment exceeding one year. The statute focuses on the offense itself—the *crime*. This language reflects Congress's intent to judge what constitutes a qualifying predicate felony by the offense rather than the individual defendant's particular circumstances.

The crime of receipt of stolen property in the third degree is punishable by a sentence of incarceration exceeding one year, even if Gaines himself could not have received such a sentence. The offense has a statutory maximum punishment of five years imprisonment. Ala. Code § 13A-5-6(4). And, under the Split Sentencing Act, a court could sentence a defendant convicted of a Class D felony of up to three years of incarceration if he had three previous felonies (two if they were Class A or Class B offenses). Ala. Code § 15-18-8 (2019). Thus, the crime of receipt of stolen property in the third degree is punishable by more than a year of incarceration under Alabama law.

Gaines's reliance on *Carachuri-Rosendo* is misplaced. (Gaines Br., at 37-39.) It did not address what it means for an offense to be "punishable" by a term of

37

imprisonment exceeding one year. *United States v. Simmons*, 649 F.3d 237, 255 (2011) (Agee, J., dissenting) ("Significantly, although the Supreme Court had the opportunity in *Carachuri* to verify what it means for an offense to be 'punishable' as a felony, it did not do so."). Instead, the case concerned the Immigration and Nationality Act (INA) and whether the defendant had been previously convicted of an "aggravated felony." *See United States v. Melendez-Davila*, 836 F. App'x 282, 285 (5th Cir. 2020) ("[*Carachuri-Rosendo*] dealt with the distinct question of whether a state conviction would qualify as a federal felony under the Immigration and Nationality Act—not how to determine a maximum sentence under Kansas law.").

Carachuri-Rosendo had two previous convictions for misdemeanor simple drug possession in Texas. To determine whether either of those convictions constituted an aggravated felony, the Court had to navigate a "maze of statutory cross-references." *Carachuri-Rosendo*, 560 U.S. at 567. It first looked at the definition of "aggravated felony," which included "a drug trafficking crime (as defined in section 924(c))." *Id.* "A drug trafficking crime" is "any felony punishable under . . . the Controlled Substances Act," and a felony, under federal law, is a crime for which the maximum term of imprisonment exceeds a year. *Id*.

Thus, the Court had to take Carachuri–Rosendo's Texas convictions and translate them to see if they could have been federally prosecuted as felonies under

the Controlled Substances Act. It is in that context that the Court declined to "consider facts not at issue in the crime of conviction . . . to determine whether Carachuri–Rosendo could have been charged with a federal felony." *Id*. 580. The Court relied on the "concrete guidance of 8 U.S.C. § 1229b(a)(3), which limits the Attorney General's cancellation authority only when the noncitizen has actually been 'convicted of a[n] aggravated felony.'" *Carachuri-Rosendo*, 560 U.S. at 567. This provision is unique to the INA and distinguishes *Carachuri-Rosendo*.

"Unlike the layers of conjecture required to project what crimes Carachuri could have committed, here no speculation or extrapolation is needed." *Simmons*, 649 F.3d at 254 (Agee, J., dissenting). Conversion from state law to federal law is not required. This Court need not determine if Gaines's prior conviction has a federal analogue. Instead, the question presented is more straightforward: is the crime Gaines was convicted of punishable by more than a year imprisonment? That inquiry begins and ends with a single statute—no cross references required. The *crime* of receipt of stolen property in the third degree is punishable by a term of imprisonment of one year, even if Gaines's particular *conviction* was not.

### III.    The district court correctly denied the motion to suppress.

The district court did not err by adopting the magistrate judge's recommendation and denying Gaines's motion to suppress. Gaines was a passenger in a vehicle that was pulled over for a tag light violation, the driver consented to a

39

search of her vehicle, and officers found a backpack in the vehicle with Gaines's firearm inside. (Gov. Supp. Ex. 1, at 2:24:00-2:24:16.) The Court correctly concluded that officers did not unlawfully prolong the stop before consent to search the vehicle was given, and so there was no *Rodriguez* violation. Gaines contends that the stop was unlawfully extended but he fails to address the district court's extensive findings that both the request to search the vehicle and the search itself took place while the traffic mission of the stop was still underway. Gaines also contends that he was unlawfully detained, but there is no connection between that alleged violation and the discovery of the firearm that would warrant suppression.

### A.    No *Rodriguez* violation occurred because the stop was not unlawfully prolonged before consent was given.

This Court's decision in *Vargas* controls here, and the magistrate was correct that it "squarely governs most of the police encounter at issue in this case." (Doc. 42, at 18.) In *Vargas*, the officer pulled over a vehicle for tailgating and failing to maintain its lane of travel. *United States v. Vargas*, 848 F.3d 971, 972–73 (11th Cir. 2017). Like the driver in this case, the stopped vehicle's driver admitted that he did not possess a valid driver's license. *Id*. at 973. Shortly after, the officer informed the driver that he would be receiving a citation for following too closely. *Id*.

The officer then had to ascertain whether Vargas, the vehicle's passenger, could drive the vehicle. *Id*.  Vargas did not have a valid license either. *Id*. The officer then began trying to figure out how the vehicle could be lawfully moved. *Id*. Fifteen

40

minutes after the officer had told the driver he would be receiving a citation, he asked the driver for consent to search the vehicle. *Id.* The driver agreed, and controlled substances were found during the search. *Id*.

Similarly, in this case, the vehicle carrying Gaines was pulled over for malfunctioning tag lights and the driver told officers she did not have a valid license. (Doc. 42, at 3.) The request to search the vehicle occurred while the officers were asking the other passengers of the vehicle whether they could drive the vehicle. (*Id*. at 24-25.) Thus, the attempt to obtain consent did not add time to the traffic stop. (*Id*.)

For that reason, Gaines's efforts to distinguish *Vargas* miss the mark. He argues that *Vargas* does not stand for the proposition that officers can extend a traffic stop based on a consent search, but rather that the case held that the search was valid because it was "conducted while [the officer's] traffic-related duties were ongoing." (Gaines Br., at 48.) But the magistrate's report, which was adopted by the district court, found that "although the search of the vehicle may not relate to the purpose of the stop, it did not extend the stop beyond the time it took to conduct a permissible component of the traffic stop's mission, *i.e*., the records-check." (Doc. 42, at 42 n.23)

That said, Gaines is also wrong to assert that any consent search must take place only while the traffic mission is still ongoing and cannot extend the stop, even if consent is given before the traffic mission is complete and the stop is not

41

prolonged. Under *Vargas*, the key consideration is whether the officer "complete[d] his duties between the time the stop was made and the time [the driver] consented to the search of the vehicle." *Id*. at 974. It is true that *Vargas* notes that the traffic mission was not completed even by the time the consent search was completed. *Id.* But the dispositive fact was that the officer asked for consent to search "while the continued detention was still lawful." *Id*.

By focusing on whether consent was received during a period of lawful detention, *Vargas* recognized that a driver's consent to search can lawfully extend the encounter. This holding accords with other circuits' post-*Rodriguez* jurisprudence. *See, e.g*., *United States v. Salkil*, 10 F.4th 897, 899 (8th Cir. 2021) ("Once police lawfully secured consent to search, any delay occasioned by the search did not constitute an unlawful extension of the seizure."). If consent to search was given before a *Rodriguez* violation occurred, *i.e.*, if the stop had not been prolonged when consent was obtained, *Rodriguez* is no longer relevant to the consent search's execution. Instead, the Fourth Amendment's general reasonableness standard governs.

The district court cases concerning consent searches and *Rodriguez* cited by Gaines are simply inapposite. In *Keith*, for instance, the court found that "no officer was 'engaged in procedures reasonably necessary for the completion of [the stop's] purpose – issuing a citation'" when consent to search was requested. *United States*

*v. Keith*, 2021 WL 6340985, at *4 (S.D. Ga. Dec. 2, 2021) (quoting *United States v. Wilson*, 662 F. App'x 693, 696 (11th Cir. 2016)). The opinion explained, however, that "officers are permitted to ask for consent to search so long as the question is posed while active progress is being made to complete the traffic stop." *Id*. at *5.

The other cases cited by Gaines are also distinguishable. *See United States v. Coleman*, No. 7:21-CR-00233-LSC-SGC, 2022 WL 17548610, at *5 (N.D. Ala. Aug. 4, 2022) (finding that no officers were "engaged in any task related to the mission of the stop when Officer Albaradei made the request to search"); *United States v. Ward*, No. 16-CR-00485-JST-1, 2017 WL 1549474, at *3 (N.D. Cal. May 1, 2017) ("[T]he search of Ward's person and car only occurred because of Officer Meads' impermissible questioning."); *United States v. Mahone*, 179 F. Supp. 3d 760, 767 (E.D. Mich. 2016) (holding that previous consent "did not support a search of the car after the officers had completed their traffic violation investigation without searching the vehicle"). In each of the cases Gaines cites, officers had completed the traffic stop's mission when the consent search occurred. But in this case, the traffic stop's mission, which included efforts to identify someone who could lawfully drive the vehicle, was still ongoing, and had not been prolonged, when consent to search was requested and received.

Gaines's attempt to distinguish *United States v. Gonzalez* is similarly unavailing. In *Gonzalez*, the defendant, who was driving a tractor-trailer, was

stopped on a highway after an officer observed Gonzales cross the fog line. *United States v. Gonzalez*, 275 F. App'x 930, 931 (11th Cir. 2008). After the officer pulled Gonzalez over, he inquired about where he was going and whether he had been drinking. *Id*. The officer then told *Gonzalez* he planned to issue him a warning. *Id*.

Gaines argues that at the point Gonzalez consented to a search, "there was . . . no ongoing detention because the traffic stop had concluded." (Gaines Br., at 49.) But the facts of the case show otherwise. The officer told *Gonzalez* that he planned to issue him a warning, but he had not actually done so yet. *Gonzalez*, 275 F. App'x at 932 ("[The officer] had not physically handed Gonzalez the traffic warning at this point."). Thus, the traffic stop's mission was still ongoing when the officer requested, and received, consent to search the vehicle.

### B. Gaines cannot show a nexus between the constitutional violation he alleges (unlawful detention) and the discovery of the firearm in a backpack during the consent search.

Gaines also contends that he was unlawfully detained by the officers' decision to conduct frisks that were not connected to the traffic mission of the stop and by the driver's decision to consent to a search of her vehicle. (Gaines Br., 42-43, 50-53.) Regardless of their purported merits, these objections fail to provide any basis for suppression of the firearm because there is not a nexus between the alleged constitutional violation and that evidence. "Unlawful police conduct requires suppression of evidence only if there is a causal connection between the conduct and

44

the evidence in question." *United States v. Kapperman*, 764 F.2d 786, 793 (11th Cir. 1985). To determine "whether there is a nexus between the evidence in question and the police conduct," this Court performs "essentially a common sense evaluation of the facts and circumstances of the particular case." *Id*.

Here, the stop of the vehicle was lawful. The broken tag lights observed by the officer established probable cause. Gaines argues that the driver's consent to search the vehicle "cannot legitimize the ongoing detention of the non-consenting passengers." (Gaines Br., at 50.) But, as the magistrate judge recognized, a passenger generally does not have standing to object to a driver's consent to a search of her own vehicle. (Doc. 42, at 72 (citing *Lewis v. United States*, 491 F. App'x 84, 85 (11th Cir. 2012); *United States v. Ubaldo-Viezca*, 398 F. App'x 573, 579 (11th Cir. 2010)); s*ee also United States v. Houston*, 589 F. App'x 507, 508-509 (11th Cir. 2015) (holding that passenger was not subject to detention when driver consented to search of vehicle). Thus, his objection is irrelevant because Gaines still could not show a nexus between his purported detention and the recovery of the firearm.[13] The

---

[13] It is true that the magistrate judge concluded that the driver did not have apparent authority to consent to the search of the backpack in the car. (Doc. 42, 77 n.34.) But Gaines lacks standing to challenge the search because it was not his backpack. There is also no nexus between Gaines's detention and this search. It would have occurred even if Gaines left the scene. Moreover, given that consent to search the vehicle had already been given, the Fourth Amendment's general reasonableness requirement governs rather than Rodriguez. The search of the backpack did not unreasonably prolong the search.

valid consent search gave officers authority to search the vehicle. The backpack was discovered in the vehicle. (Gov. Supp. Ex. 1, at 2:24:00-2:24:16.) And the backpack, as the opinions below found, did not belong to Gaines. (Doc. 42, at 65-73; Doc., at 16-18.) Thus, Gaines's purported detention has no causal connection to the firearm, which was discovered during a lawful search of someone else's property.

## IV.    Binding precedent forecloses Gaines's constitutional challenge to § 922(g)(1).

Gaines acknowledges that this Court recently determined in *United States v. Dubois*, 94 F.4th 1284 (11th Cir. 2024), that *Rozier* remains good law after *Bruen* and that it forecloses facial challenges to § 922(g)(1). (Gaines Br., at 56.) But he suggests that as-applied challenges to the statutes are still viable because *Rozier* was a purely facial attack. (*Id.*) This is incorrect. *Rozier* forecloses as-applied attacks as well as facial challenges to the statute.

Rozier, like Gaines, claimed that he possessed a firearm for self-defense. *United States v. Rozier*, 598 F.3d 768, 770 (11th Cir. 2010) ("For the purposes of this appeal, we accept Rozier's assertion that he possessed the handgun for self-defense . . . ."). This Court "specifically addressed Rozier's individual circumstances as a felon before holding that § 922(g)(1) was a permissible restriction on his Second Amendment right." *Flick v. Att'y Gen., Dep't of Just.*, 812 F. App'x 974, 975 (11th Cir. 2020); *see also United States v. Pierre*, No. 23-11604, 2024 WL 1070655, at *1 (11th Cir. Mar. 12, 2024) (holding post-*Dubois* that *Rozier* foreclosed an as-applied

challenge to § 922(g)(1)). Thus, *Rozier* and *Dubois* foreclose Gaines's Second Amendment challenge to § 922(g)(1), whether it is a facial challenge or an as-applied attack.

## V. Binding precedent forecloses Gaines's constitutional challenge to the district court considering acquitted conduct at sentencing.

Like his Second Amendment claim, Gaines's challenge to the district court's use of acquitted conduct at sentencing is also foreclosed by binding precedent. In this Circuit, "[i]t is well settled . . . that the sentencing court may consider any fact for which a defendant has been acquitted as long as the Government proves, by a preponderance of the evidence, the occurrence of that conduct and as long as the enhancement results in a sentence below the maximum statutory penalty authorized by the jury's verdict." *United States v. Maddox*, 803 F.3d 1215, 1220 (11th Cir. 2015). Here, the district court found by a preponderance of evidence that the firearm Gaines possessed was registerable under the National Firearms Act, and imposed a sentence that was below the statutory maximum. Thus, neither the Fifth or Sixth Amendments were implicated.

## CONCLUSION

The judgment below should be affirmed.


Respectfully Submitted,

*/s/ John M. Hundscheid*
John M. Hundscheid
Assistant United States Attorney

## CERTIFICATE OF COMPLIANCE

Under Fed. R. App. P. 32(a)(7)(C), I certify that this brief complies with the type-volume limitations set forth in Fed. R. App. P. 32(a)(7)(B)(i). The brief contains 11,674 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

I further certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6). The brief was prepared in Microsoft Word 14-point Times New Roman type.

*/s/ John M. Hundscheid*
John M. Hundscheid
Assistant United States Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that on April 12, 2024, I electronically filed this Brief with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

On this same date, the original and additional copies of the Brief of Appellee were filed by Federal Express overnight delivery, addressed as follows:

Clerk's Office – Appeal No. 24-10117-DD
U.S. Court of Appeals for the Eleventh Circuit
56 Forsyth Street NW
Atlanta, GA  30303.

*/s/ John M. Hundscheid*
John M. Hundscheid
Assistant United States Attorney

50