No. 24-10117

**IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT**

———————

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

JOSHUA EUGENE GAINES,
*Defendant-Appellant.*

———————

On Appeal from the United States District Court for the Northern
District of Alabama Case No. 5:22-cr-0165-LCB-HNJ

———————

# CORRECTED
# INITIAL BRIEF OF APPELLANT
# JOSHUA EUGENE GAINES

KEVIN L. BUTLER
Federal Public Defender
Northern District of Alabama

DEANNA LEE OSWALD
Assistant Federal Defender
200 Clinton Ave. West, Suite 503
Huntsville, AL 35801
256-684-8700
Deanna_Oswald@fd.org

ALEXANDRIA DARBY
Appellate Attorney
200 Clinton Ave West, Suite 503
Huntsville, AL 35801
256-684-8700
Alex_Darby@fd.org

May 3, 2024

# Certificate of Interested Persons and Corporate Disclosure Statement

1. Becher, Robert, Former United States Attorney for the Northern District of Alabama;

2. Billingsley, Michael B., Assistant United States Attorney for the Northern District of Alabama;

3. Burke, The Honorable Liles C., United States District Judge For the Northern District of Alabama;

4. Butler, Kevin L., Federal Public Defender for the Northern District of Alabama;

5. Cornelius, The Honorable Staci G., United States Magistrate Judge for the Northern District of Alabama;

6. Escalona, Prim F., United States Attorney for the Northern District of Alabama;

7. Gaines, Joshua, Defendant-Appellant;

8. Johnson, Jr., The Honorable Herman N., United States Magistrate Judge for the Northern District of Alabama;

9. McCrary, Latasha, Former Assistant Federal Public Defender for the Northern District of Alabama;

c-1

10.    Oswald, Deanna, Assistant Federal Public Defender for the Northern District of Alabama;

11.    Penfield, Russell, Assistant United States Attorney for the Northern District of Alabama;

12.    Pillsbury, Michael R., Assistant United States Attorney for the Northern District of Alabama;

13.    Randell, Chloe, United States Probation Officer for the Northern District of Alabama;

14.    Rones, Ryan, Assistant Federal Public Defender for the Northern District of Alabama; and

15.    White, Bradley, Supervisory United States Probation Officer for the Northern District of Alabama.

# Request for Oral Argument

Mr. Gaines requests oral argument. This case presents issues of first impression, including asking the Court to clarify the scienter element of 18 U.S.C. § 922(g)(1). To obtain a conviction under that statute the government must prove the defendant knew, at the time he possessed a firearm, that he had been convicted of "a crime punishable by imprisonment for a term exceeding one year." 18 U.S.C. § 922(g)(1). But the district court in this case—relying on this Circuit's pattern jury instruction—charged the jury to convict Mr. Gaines if the government proved he knew he had been convicted of a "felony."

The difference matters because Mr. Gaines conceded at trial that he knew he had a prior conviction for a felony offense. But he argued in defense that his only prior felony conviction was for receiving stolen property in the third degree, that he had received probation for that conviction, and that, prior to pleading guilty to that offense, his attorney had advised him he could not receive any prison sentence. A properly informed jury could therefore have acquitted Mr. Gaines, finding he knew his prior conviction was classified as a felony but not that it was punishable by imprisonment for a term exceeding one year.

The reason Mr. Gaines's attorney advised he could not receive a prison sentence is that receiving stolen property in the third degree is a Class D felony and, at the time Mr. Gaines was convicted of that offense, Alabama law mandated non-prison sentences for non-recidivist defendants convicted of Class D felonies. This appeal therefore also asks the Court to determine whether Mr. Gaines's conviction was actually punishable by imprisonment for a term exceeding one year. This too, is a question of first impression.

Oral argument will aid the Court's decisional process because the dispositive issues have not been authoritatively decided.

# TABLE OF CONTENTS

Certificate of Interested Persons and Corporate Disclosure Statement ................................................................... c-1

Request for Oral Argument ..................................................... i

Table of Contents ................................................................ iii

Table of Authorities ............................................................ vi

Statement of Jurisdiction .................................................... xii

Statement of the Issue ......................................................... 1

Statement of the Case ......................................................... 3

    I.    Statement of the Facts ................................................. 3

        A. Mr. Gaines is convicted of receiving stolen property in the third degree ..................................................... 3

        B. Six months after his conviction, Mr. Gaines admits to having a firearm for self-defense ............................... 7

    II.   Course of Proceedings and Disposition Below .......................... 11

        A. The Second Amendment Challenge ..................................... 11

        B. The Motion to Suppress Evidence ..................................... 11

        C. Sufficiency of the Evidence ........................................ 12

        D. Jury Instructions ................................................. 12

        E. Sentencing Based on Acquitted Conduct .............................. 13

    III.  Standard of Review .................................................. 14

Summary of the Argument ..................................................... 16

    1. The Jury Instruction..................................................... 16

    2. Sufficiency of the Evidence......................................... 17

    3. Suppression................................................................ 17

    4. The Second Amendment............................................. 18

    5. Acquitted Conduct ..................................................... 19

Argument.............................................................................. 20

I.    The conviction must be vacated because the jury instructions misstated the law as to the scienter element of §922(g)(1) ............................................................. 20

    A. The jury instruction misstated the law and was misleading. ........................................................... 20

    B. The error is not harmless........................................ 26

II.   Because Alabama law requires non-prison sentences for Class D felony offenses, the evidence was insufficient to prove Mr. Gaines's conviction for receiving stolen property was punishable by more than one year in prison .................... 28

    A. Alabama law limits the use of imprisonment for non-recidivist defendants convicted of Class D felonies.............. 30

    B. Mr. Gaines's Prior Conviction................................ 32

    C. This case is not controlled by *Gardner* ................................. 35

III.  Evidence of the firearm should have been suppressed prior to the trial under the Fourth Amendment................................ 40

A. Mr. Gaines has standing to contest his own prolonged detention.................................................................... 42

B. The frisks and searches of the car's occupants violated the Fourth Amendment ........................................ 42

C. The consent search is an additional *Rodriguez* violation..... 44

    1. The driver did not impliedly consent to any prolonged detention by consenting to a search ......... 46

    2. The driver's consent to search cannot justify the ongoing detention of the car's passengers ................ 50

    3. Even if the driver's consent is valid to prolong the detention during the search of the car, it could not justify prolonged detention during the search of the backpack because she did not have apparent authority to consent to a search of the passengers' items ...................................................... 53

IV. The conviction under § 922(g)(1) violates Mr. Gaines's Second Amendment right to keep and bear arms.................... 55

V. Sentencing Mr. Gaines based on acquitted conduct violates his rights under the Fifth and Sixth Amendments ................. 62

Conclusion ......................................................................... 65

Certificate of Compliance ..................................................... 66

Certificate of Service ........................................................... 67

v

# TABLE OF AUTHORITIES

| Federal and State Cases | Page(s) |
|---|---|

*Arizona v. Johnson,* 555 U.S. 323 (2009) ................................................. 45

*Baxter v. Roberts*, 54 F.4th 1241 (11th Cir. 2022) ................................... 43

*Brendlin v. California*, 551 U.S. 249, 251 (2007) ...................... 40, 42, 45

*Bumper v. North Carolina*, 391 U.S. 543 (1968) .................................... 51

*Carachuri-Rosendo v. Holder*, 560 U.S. 563 (2010) ........................... 37-38

*Clark v. State*, 166 So. 3d 147 (Ala. Crim. App. 2014) ........................... 31

*Florida v. Bostick*, 501 U.S. 429 (1991) .................................................. 52

*Greer v. United States*, 593 U.S. 503 (2021) ........................................... 22

*Hyde v. State*, 185 So.3d 501 (Ala. Crim. App. 2015) ............................. 32

*Jones v. United States*, 574 U.S. 948 (2014) ........................................... 63

*Laakkonen v. State*, 293 So.3d 439 (Ala. 2019) ................................. 31, 34

*McCarthy v. United States*, 135 F.3d 754 (11th Cir. 1998) ................... 36

*McDonnell v. United States*, 579 U.S. 550 (2016) .............................. 24-25

*Neder v. United States*, 527 U.S. 1 (1999) .............................................. 27

\* *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (2022) 11, 18, 55

\* *Range v. Att'y Gen. United States of Am.*, 69 F.4th 96
    (3d Cir. 2023) ...................................................... 23, 55, 62

\* *Rehaif v. United States*, 139 S. Ct. 2191 (2019) ........................... 1, 21, 22

\* *Rodriguez v. United States*, 575 U.S. 348 (2015).... 2, 11, 17-18, 40-46, 52

*Stromberg v. People of State of Cal.*, 283 U.S. 359 (1931) ...................... 26

*United States v. Ballinger*, 395 F.3d 1218 (11th Cir. 2005) .................. 15

*United States v. Bean*, 537 U.S. 71 (2002) ............................................. 55

*United States v. Bell*, 808 F.3d 926 (D.C. Cir. 2015) ............................. 63

*United States v. Bernard*, 927 F.3d 799 (4th Cir. 2019)......................... 51

*United States v. Burwell*, 763 F. App'x 840 (11th Cir. 2019) ........... 45, 49

*United States v. Coleman*, No. 7:21-cr-00233-LSC-SGC, Doc. 46, slip op. at \*11 (N.D. Ala. Aug. 4, 2022).................................................. 46, 52

*United States v. Dubois*, No. 22-10829, 2024 WL 927030 (11th Cir. Mar. 5, 2024)........................................................................................ 56

*United States v. Faust*, 456 F.3d 1342 (11th Cir. 2006) ........................ 63

*United States v. Felts*, 579 F.3d 1341 (11th Cir. 2009)........................... 14

*United States v. Gardner*, 34 F.4th 1283 (11th Cir. 2022) ............... 35-39

*United States v. Gibson*, 708 F.3d 1256 (11th Cir. 2013) ...................... 14

*United States v. Grigsby,* 111 F.3d 806 (11th Cir. 1997)........................ 24

*United States v. Hernandez*, 418 F.3d 1206 (11th Cir. 2005)................ 52

*United States v. Hernandez*, 743 F.3d 812 (11th Cir. 2014).................. 15

*United States v. Heyward*, 42 F.4th 460 (4th Cir. 2022) ........................ 24

*United States v. Hill*, 852 F.3d 377 (4th Cir. 2017).......................... 50, 52

vii

*United States v. Hisey*, 12 F.4th 1231 (10th Cir. 2021) ......................... 38

*United States v. Jimenez-Shilon*, 34 F.4th 1042 (11th Cir. 2022).......... 60

*United States v. Isnadin*, 742 F.3d 1278 (11th Cir. 2014)...................... 14

*United States v. Keith*, 2021 WL 6340985 (S.D. Ga. Dec. 2, 2021) ........ 46

*United States v. Kottwitz*, 614 F.3d 1241 (11th Cir. 2010).................... 24

*United States v. Leon*, 924 F.3d 1021 (8th Cir. 2019)............................ 51

*United States v. Lopez*, 590 F.3d 1238 (11th Cir. 2009) ........................ 20

*United States v. Mahone*, 179 F. Supp. 3d 760 (E.D. Mich. April 8, 2016) ....................................................................................................... 46-47

*United States v. McAdory*, 935 F.3d 838 (9th Cir. 2019)....................... 38

*United States v. Powell*, 628 F.3d 1254 (11th Cir. 2010)....................... 14

*United States v. Pruitt*, 174 F.3d 1215 (11th Cir. 1999)........................ 44

*United States v. Purcell*, 236 F.3d 1274 (11th Cir. 2001)................. 48-49

*United States v. Ramirez*, 476 F.3d 1231, 1238 (11th Cir. 2007)........... 44

*United States v. Rozier*, 598 F.3d 768 (11th Cir. 2010) ........................ 56

*United States v. Ruan*, 56 F.4th 1291 (11th Cir. 2023) ......................... 25

*United States v. Sabillon-Umana*, 772 F.3d 1328 (10th Cir. 2014) ....... 64

*United States v. Salkil,* 10 F.4th 897 (8th Cir. 2021) ............................ 51

*United States v. Silverman*, 745 F.2d 1386 (11th Cir. 1984) ................ 20

*United States v. Takhalov*, 827 F.3d 1307 (11th Cir.)......................26, 27

*United States v. Tuton*, 893 F.3d 562 (8th Cir. 2018).......................52-53

*United States v. Valencia-Mendoza*, 912 F.3d 1215 (9th Cir. 2019) ......37

*United States v. Vargas*, 848 F.3d 971 (11th Cir. 2017)....................47-48

*United States v. Ward*, 2017 WL 1549474 (N.D. Cal. May 1, 2017) ......46

*United States v. Yeary*, 740 F.3d 569 (11th Cir. 2014) ...........................51

## Federal Rules of Appellate Procedure                    Page(s)

Fed. R. App. P. 4(b)(1)(A)(i) .................................................................xi

Fed. R. App. P. 32(g) ...........................................................................66

Fed. R. App. P. 32(a)(7)(B) .................................................................66

## United States Code                                        Page(s)

18 U.S.C. § 921(a)(20)(B)................................................................22, 23

18 U.S.C. § 922(g)(1)......................1-3, 11-12, 16, 18, 20-23, 37-39, 55-61

18 U.S.C. §924(e) ................................................................................35

18 U.S.C. § 924(e)(2)(A)(ii) ...........................................................36, 37

18 U.S.C. § 925(c) ...............................................................................55

18 U.S.C. § 3231 .................................................................................xi

18 U.S.C. § 3742 .................................................................................xi

26 U.S.C. § 5861 ............................................................................11, 13

ix

26 U.S.C § 5845 ................................................................ 13, 19, 62

28 U.S.C. § 1291 .........................................................................xi

**Alabama State Code**                                               **Page(s)**

Ala. Code § 12-25-34.2................................................................31

Ala. Code § 13A-5-6(a)(4) ....................................................... 29, 30

Ala. Code § 13A-8-16 ..................................................................57

Ala. Code § 13A-8-18.1 ........................................................... 3, 57

Ala. Code § 15-18-8 (2019) ............................... 12, 30, 31, 34, 39

Ala. Code § 15-22-54(e) (2019) ......................................... 31, 34

**11th Circuit Rules and Internal Operating Procedures**     **Page(s)**

11th Cir. R. 28-5 ..........................................................................5

11th Cir. R. 32-4 ........................................................................66

**11th Circuit Pattern Jury Instructions**                    **Page(s)**

Judicial Council of the United States Eleventh Judicial Circuit, Criminal Pattern Jury Instructions O34.6, (March 2022 ed.) ..............22

**Secondary Sources**                                            **Page(s)**

Adam Winkler, *Heller's Catch-22*, 56 UCLA L. Rev. 1551, 1563 (2009) ("The Founding generation had no laws limiting gun possession by the mentally ill, nor laws denying the right to people convicted of crimes.") ................................................................61

Alex Gladden, *District attorneys lead bipartisan push for stronger penalties in Alabama*, Montgomery Advisor (April 14, 2023)................29

Carlton F.W. Larson, *Four Exceptions in Search of A Theory: District of Columbia v. Heller and Judicial Ipse Dixit*, 60 Hastings L.J. 1371, 1374 (2009) ("no colonial or state law in eighteenth-century America formally restricted the ability of felons to own firearms") .................................................................................. 61

Kevin Marshall, *Why Can't Martha Stewart Have a Gun?*, 32 Harv. J.L. & Pub. Pol'y 695, 698–99 (2009) ...................................................... 60

Mary Sell, *Law Enforcement: Class D felony 'experiment' a failure*, Alabama Daily News (September 20, 2022) ........................................... 29

Robert H. Churchill, *Gun Regulation, the Police Power, and the Right to Keep Arms in Early America: The Legal Context of the Second Amendment*, 25 Law & Hist. Rev. 139, 142 (2007) .................... 61

# Statement of Jurisdiction

This is a direct appeal of a final judgment in a criminal case. The United States District Court for the Northern District of Alabama had original subject matter jurisdiction under 18 U.S.C. § 3231. The district court entered judgment on January 12, 2024. Doc. 82. Mr. Gaines timely invoked this Court's jurisdiction by filing a notice of appeal on January 12, 2024, see Doc. 83, within the 14 days provided by Fed. R. App. P. 4(b)(1)(A)(i). This Court has appellate jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

# Statement of the Issues

A jury convicted Joshua Gaines of violating 18 U.S.C. § 922(g)(1), which makes it unlawful for any person "who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year" to possess a firearm in or affecting commerce. *Id.* Under *Rehaif v. United States*, 139 S. Ct. 2191 (2019), the government must prove the defendant "knew he belonged to the relevant category of persons barred from possessing a firearm." *Id.* at 2200.

1. Mr. Gaines's defense at trial was that he did not know his prior conviction for receiving stolen property was punishable by imprisonment for more than one year, despite knowing it was classified as a felony offense. Did the district court err by instructing the jury Mr. Gaines could be found guilty if he knew his prior conviction was "a felony, a crime punishable by imprisonment for more than one year?"

2. At trial the government proved that, prior to possessing a firearm, Mr. Gaines had been convicted of receiving stolen property in the third degree, a Class D felony under Alabama law. At the time he was convicted, Alabama law mandated that non-recidivist

1

defendants convicted of Class D felony offenses receive a non-prison sentence. Was the evidence sufficient to prove that Mr. Gaines had been convicted of "a crime punishable by imprisonment for a term exceeding one year?"

3. Under *Rodriguez v. United States*, 575 U.S. 348 (2015), officers violate the Fourth Amendment's proscription against unreasonable seizures if they delay a traffic stop to conduct unrelated investigations. Should Mr. Gaines's suppression motion have been granted, where officers delayed the traffic stop to frisk the occupants of the car, without reasonable suspicion, and conducted a consent search while the occupants remained detained?

4. Does 18 U.S.C. § 922(g)(1) violate the Second Amendment, both facially and as applied to Mr. Gaines?

5. At sentencing, did the district court err by relying on acquitted conduct to enhance Mr. Gaines's sentence in violation of the Fifth and Sixth Amendments?

# Statement of the Case

This is a direct appeal in a criminal case. A jury convicted Joshua Gaines of possessing a firearm in violation of 18 U.S.C. § 922(g)(1). J., Doc. 82. The district court sentenced Mr. Gaines to serve a 51-month term of imprisonment. *Id.* Mr. Gaines has been in custody since June 29, 2022, Min. Entry 6/29/2022, and is currently serving his sentence at FCI Beckley.

## I. Statement of Facts

### A. Mr. Gaines is convicted of receiving stolen property in the third degree.

In November 2019, Mr. Gaines pleaded guilty to receiving stolen property in the third degree, a Class D felony under Ala. Code § 13A-8-18.1. Gov't Trial Ex. 2. He received a suspended sentence of 24 months and was placed on probation for two years. *Id.* Before pleading guilty, Mr. Gaines reviewed and signed a form titled, "Explanation of Rights and Plea of Guilty," which advised him of the potential penalties he faced:

| Alabama Sentencing Commission | **EXPLANATION OF RIGHTS AND** | Case Number |
|---|---|---|
| *Presumptive Sentencing Standards* | **PLEA OF GUILTY** | CC2019-4122 CMC |
| | (Presumptive Sentencing Standards – Circuit or District Court) | Count |
| | (For Offenses sentenced on or after October 1, 2013) | (ensure, if Applicable) |

IN THE _____ Circuit _____ COURT OF _____ Madison _____, **ALABAMA**
        (Circuit or District)                                (Name of County)
STATE OF ALABAMA v. _____ Joshua Gaines _____
                                        **Defendant**

TO THE ABOVE-NAMED DEFENDANT: The Court, having been informed that you wish to enter a plea of guilty in this case, hereby informs you of your rights as a defendant charged with a criminal offense.

**PENALTIES APPLICABLE TO YOUR CASE**

You are charged with the crime of Receiving Stol. Prop-3rd , which is a Class D  Felony .  The Court has been informed that you desire to enter a plea of guilty to  X  this offense or ____ to the crime of _____ _____ which is a ____ felony.  As such this offense is a Presumptive Sentencing Standards Offense and the presumptive sentence range for this offense based on Presumptive Sentencing Standards worksheets and sentence length table for ____ Drugs X  Property A.  The Presumptive sentence disposition and range for this offense based on the worksheets and sentence length table is  X  non-prison ____ prison and 13 to 31  months, with, when prison is imposed, an incarceration portion of a split sentence from  6  to 12  months. This sentence range includes the total sentence length that will apply to all offenses sentenced at this sentence hearing.  The court may depart from the presumptive sentence disposition or sentence range upon a finding of the existence of an aggravating or mitigating factor.  The State has asserted the following aggravating factors:

Gov't Trial Ex. 2, at 4.[1]

---

[1] The text reads:

[The] offense is a Presumptive Sentencing Standards Offense and the presumptive sentence range for this offense based on Presumptive Sentencing Standards worksheets and sentence length table for __ Drugs _x_ Property A. The Presumptive sentence disposition and range for this offense based on the worksheets and sentence length table is _x_ non-prison __ prison and 13 to 31 months with, when prison is imposed, an incarceration portion of a split sentence from 6 to 12 months. This sentence range includes the total sentence length that will apply to all offenses sentenced at this sentence hearing. The court may depart from the presumptive sentence disposition or sentence range upon a finding of the existence of an aggravating or mitigating factor. The State has asserted the following aggravating factors:

[blank]

4

His attorney at the time, Thomas Jarvinen, explained the purpose of this form was to advise Mr. Gaines of what possible sentence he could receive. Trial Tr. II, Doc. 89, 161.[2] Consistent with the form, Mr. Jarvinen advised Mr. Gaines, "[t]his is non – what is considered under the sentencing guidelines a non-prison event. . . . So, presumptively, the guidelines say that this person cannot go to jail. . . . Cannot go to prison." *Id.* at 162.

The government called probation officer Catherine Smith, who testified based on her review of the probation file that she met with Mr. Gaines for a "rules appointment." *Id.* at 89, 92. She could not remember Mr. Gaines or any specifics about the meeting. *Id.* at 97–98. But she testified she would have reviewed two documents with him—the Order of Probation and a form titled, "Registration of Felons." *Id.* at 92–94; Gov't Trial Exs. 9, 10.

The Order of Probation listed the conditions of Mr. Gaines's probation, including the condition that he not possess firearms. Gov't

---

[2] "Doc." refers to numbered entries on the district court docket. Page references are to the page number in the header generated by the district court's electronic filing system. *See* 11th Cir. R. 28-5.

Trial Ex. 9. Due to Ms. Smith's "oversight," the Order was not signed by the judge, nor by Mr. Gaines. Trial Tr. II, Doc. 89, 95. The section where Ms. Smith was supposed to fill in Mr. Gaines's contact information was left blank. Gov't Trial Ex. 9. And the document did not make it to the court file until September 5, 2023, almost four years after it was created and only a week before the trial in this case. *Id.;*  Trial Tr. II, Doc. 89, 101.

Ms. Smith also testified she reviewed the "Registration of Felons" form with Mr. Gaines. Gov't Trial Ex. 10. That form did purport to be signed by Mr. Gaines and incorrectly informed him, "due to you having three felony convictions or more, you must register with the Madison County Sheriff's Office as a convicted felon." *Id*. The government conceded that Mr. Gaines did not actually have three prior felonies. Trial Tr. II, Doc. 89, 97. The form also listed various state and federal laws governing people with felony convictions, including the Federal Gun Control Act of 1968. Gov't Trial Ex. 10. The form misstates the Act by stating it prohibits "anyone convicted of a felony from receiving, possession, or transporting any firearm." *Id*. This form, also, was not filed with the court until the week prior to trial. *Id*.

Kimberly Pinkerton, court specialist for the Madison County Clerk's Office, testified she received the Order of Probation (Gov't Trial Ex. 9) and made sure to stamp it as received on September 5, 2023, to document that it had not been received until that date. Trial Tr. II, Doc. 89, 155. She wanted to be clear about the date it was received because her office typically receives the Order when the offender begins probation, not years later. *Id.*

### B. Six months after his conviction, Mr. Gaines admits to having a firearm for self-defense.

On May 13, 2020, at 2:00 A.M., Officer Benjamin Johnson pulled over a car with a broken tag light. Trial Tr. I, Doc. 88, 80–81. There were four people in the car. *Id.* at 81. Joshua Gaines was riding in the front passenger seat. Trial Tr. II, Doc. 89, 7.

The traffic stop was captured by body cameras worn by Officer Johnson and by Officers Baker and Mitchell, who subsequently arrived on scene. Excerpts from the footage captured by Officers Johnson and Mitchell were admitted at trial. Gov't Trial Exs. 3, 4; Def. Trial Ex. 6. The footage captured by Officers Johnson and Baker was admitted at the suppression hearing in full. Gov't Suppression Exs. 1, 2. Transcriptions

of the audio from those two exhibits were admitted at the suppression hearing, but not at trial. Def. Suppression Exs. 5, 6.

The videos show that Officer Johnson approached the car and explained to Ms. Riley, the driver, the reason for the stop. He asked for her driver's license, but she did not have one. Officer Johnson then handed her a notepad and began to collect identification information from her and the passengers. A few minutes into the stop, Officer Johnson asked, "You guys don't have any guns, drugs, knives, bombs, or anything like that in the car, do you?" Ms. Riley shook her head "no" in response. Officer Johnson asked if she minded if he looked inside to "make sure." Ms. Riley shook her head "no."

After Ms. Riley consented to a search, Officers Johnson and Baker removed all the occupants, frisked them, searched their pockets, and lined them up along the front of a patrol car. Officer Johnson then searched the car and found a firearm in a red backpack in the backseat.

The officers then placed everyone in handcuffs and began questioning them about the gun. Officer Johnson and Mr. Gaines had the following exchange:

OFFICER JOHNSON: Come over here. What's going on?

8

JOSHUA GAINES: Well, what you took out of the back of the car there was given to me a couple of days ago.

OFFICER JOHNSON: Okay.

JOSHUA GAINES: I didn't know it was in the car. It was at the house the last time I seen it. For real.

OFFICER JOHNSON: Okay. I appreciate you being honest about it because that takes a lot of nonsense off of them right now.

JOSHUA GAINES: I mean, if I knew it was in there, I would have said something about it being in there.

OFFICER JOHNSON: Okay. That's the thing is I asked if there was any guns. There's not. Right now, I have to make sure that it isn't stolen, and it is a legally modified firearm. I'll see what I can do. I've got to call investigators and stuff like that. You're being square with me, so I give — I try to -- I tell the investigators when I talk to them, Hey, this guy was cool. He talked to me. All of this stuff.

JOSHUA GAINES: I'd really like to not get a charge for this.

OFFICER JOHNSON: I got you. Like I said, you're square with me --

JOSHUA GAINES: I'm on probation right now for a  felony, so --

OFFICER JOHNSON: I got you, man.

JOSHUA GAINES: -- I really don't need --

OFFICER JOHNSON: What is it for, the felony?

JOSHUA GAINES: The felony is for receiving stolen property on a motorcycle and a camper.

OFFICER JOHNSON: Okay.

9

JOSHUA GAINES: I didn't know either one was stolen.

OFFICER JOHNSON: Do you have any violent felonies, any DVs?

JOSHUA GAINES: I have no violent crimes at all, ever in my life.

OFFICER JOHNSON: All right. Just hang out. I'll run everything by an investigator, and let them know that you were being square.

JOSHUA GAINES: Whether it's stolen or not, I have no clue.

OFFICER JOHNSON: Okay.

JOSHUA GAINES: The guy -- my sister-in-law's house, where I'm staying at, some guys kicked in the door and made some threats, and then another guy went and stole a motorcycle that belonged to my brother from my friend's house and burnt his car. And a friend of mine gave me that just in case he came to the house again.

OFFICER JOHNSON: I got you.

JOSHUA GAINES: And, I mean, cops can't be there every minute of every day.

OFFICER JOHNSON: No, I got you.

JOSHUA GAINES: And I thought it was at the house. I didn't know it was in the car at all.

Gov't Trial Ex. 3, transcribed at Def. Suppression Ex. 5.

Following this exchange, Officer Johnson spoke with an investigator about the firearm. Trial Tr. I, Doc. 88, 87. He ultimately arrested Mr. Gaines and transported him to jail. *Id.* at 87–88.

10

II. **Course of Proceedings and Disposition Below**

The government charged Mr. Gaines with two offenses related to his possession of a firearm. Count one charged Mr. Gaines possessed a firearm, knowing he had previously been convicted of a crime punishable by imprisonment for a term exceeding one year, in violation of 18 U.S.C. § 922(g)(1). Indictment, Doc. 1. Count two charged Mr. Gaines with possessing a rifle having a barrel of less than sixteen inches in length, which was not registered to him in the National Firearms Registration and Transfer Records, in violation of 26 U.S.C. § 5861. *Id.*

### A. The Second Amendment Challenge

Prior to trial, Mr. Gaines moved to dismiss the indictment under the Second Amendment and *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (2022). Doc. 14. The district court denied this motion without a hearing. Doc. 30. Mr. Gaines renewed his motion under Rule 29 after the close of evidence and the motion was again denied. Trial Tr. III, Doc. 90, 10–11.

### B. The Motion to Suppress Evidence

Mr. Gaines also moved to suppress evidence and statements obtained in violation of the Fourth Amendment and *Rodriguez v. United States*, 575 U.S. 348 (2015). Doc. 15. The motion was heard by the

11

magistrate judge, who recommended the motion be denied. Doc. 42. Over Mr. Gaines's objection, Doc. 43, the district court adopted the magistrate judge's report and recommendation and denied the motion, Doc. 44.

## C. Sufficiency of the Evidence

To support the § 922(g)(1) charge at trial, the government proved Mr. Gaines had been convicted of receiving stolen property in the third degree, which he knew was a felony offense. At the close of the evidence, Mr. Gaines moved to dismiss under Rule 29, arguing his conviction for that crime was not punishable by imprisonment for more than one year. Doc. 67. He argued Alabama's Split Sentencing Act, Ala. Code § 15-18-8 (2019) (amended 2023), required courts to impose alternatives to imprisonment on non-recidivists convicted of Class D felony offenses. The district court denied the motion. Trial Tr. III, Doc. 90, 4.

## D. The Jury Instructions

Mr. Gaines also objected to the inclusion of the term "felony" in the Court's jury charge, on grounds that "felony" appears nowhere in 18 U.S.C. § 922(g)(1) and the relevant fact Mr. Gaines had to know under the statute was whether his prior offense was punishable by imprisonment for more than one year, not whether it was classified as a "felony" under Alabama law. Trial Tr. III, Doc. 90, 11–13, 24. The district

court overruled the objection and instructed the jury Mr. Gaines could be found guilty if the government proved "the defendant knew he had previously been convicted of a felony, a crime punishable by imprisonment for more than one year." *Id.* at 68–69.

### E. Sentencing Based on Acquitted Conduct

The jury acquitted Mr. Gaines of the second count in his indictment, possessing a short-barreled rife in violation of the National Firearms Act, 26 U.S.C. § 5861(d). Doc. 70. But for sentencing, the presentence report relied on this acquitted conduct to enhance Mr. Gaines's offense level under USSG § 2K2.1(a)(4), which assigns a base offense level of 20 for offenses involving firearms described in 26 U.S.C. § 5845. PSR ¶ 17. The enhanced base offense level resulted in a guidelines imprisonment range of 41–51 months. PSR ¶ 18. Mr. Gaines objected to that finding on grounds he was acquitted of possessing a firearm described in 26 U.S.C. § 5845, therefore his base offense level should be 14 and his guidelines imprisonment level should be 21–27 months. Doc. 78 at 2, 4. The district court overruled Mr. Gaines's objection and adopted the guidelines calculation from the presentence report. Sentencing Tr., Doc. 87, 5.

III.  **Standard of Review**

This Court reviews "jury instructions challenged in the district court '*de novo* to determine whether the instructions misstated the law or misled the jury to the prejudice of the objecting party.'" *United States v. Gibson*, 708 F.3d 1256, 1275 (11th Cir. 2013), quoting *United States v. Felts*, 579 F.3d 1341, 1342 (11th Cir. 2009).

This Court "reviews de novo whether there is sufficient evidence to support a guilty verdict in a criminal trial." *United States v. Isnadin*, 742 F.3d 1278, 1303 (11th Cir. 2014). The Court "views the evidence in the light most favorable to the Government and resolves all reasonable inferences and credibility evaluations in favor of the verdict." *Id.* "Evidence is sufficient to support a conviction if a reasonable trier of fact could find that the evidence established guilt beyond a reasonable doubt." *Id.*

The "denial of a motion to suppress [is] a mixed question of law and fact." *United States v. Powell*, 628 F.3d 1254, 1256 (11th Cir. 2010). "Questions of law are reviewed *de novo,* while determinations of fact are reviewed for clear error." *Id.*

14

As to Mr. Gaines's Second Amendment claim, this Court "review[s] the constitutionality of a statute *de novo." United States v. Ballinger*, 395 F.3d 1218, 1225 (11th Cir. 2005).

As to Mr. Gaines's claim that enhancing his sentence for acquitted conduct violates the Fifth and Sixth Amendments, this Court generally reviews constitutional challenges de novo. *See United States v. Hernandez*, 743 F.3d 812, 814 (11th Cir. 2014) ("Constitutional challenges . . . are generally reviewed *de novo*").

# Summary of the Argument

1. <u>The Jury Instruction</u>

Under 18 U.S.C. § 922(g)(1), the government must prove the defendant knew, at the time he possessed a firearm, he had been convicted of "a crime punishable by imprisonment for a term exceeding one year." The term "felony" appears nowhere in the text of that statute. Despite this, the district court included the term "felony" in its jury charge, instructing the jury Mr. Gaines could be found guilty if he "knew he had previously been convicted of a felony, a crime punishable by imprisonment for more than one year."

The district court's jury charge misstated the law, was misleading, and enabled the jury to convict Mr. Gaines upon finding he knew he had been convicted of a "felony." The textual distinction matters because Mr. Gaines conceded at trial that he knew his prior conviction for receiving stolen property was classified as a felony. But he defended against the charge on grounds that he did not know it was punishable by more than a year of imprisonment. His defense attorney had advised him he could not receive a prison sentence for a Class D felony conviction and he in fact received a sentence of probation. Under the text of § 922(g)(1),

16

knowledge that the prior conviction is classified as a felony is irrelevant, it is neither necessary nor sufficient to support a conviction. A properly instructed jury could have accepted Mr. Gaines's defense and concluded Mr. Gaines did not know his conviction for receiving stolen property was punishable by more than a year's imprisonment. The conviction should therefore be reversed.

2. <u>Sufficiency of the Evidence</u>

At the time Mr. Gaines was convicted of receiving stolen property, a Class D felony, Alabama law required courts to impose non-prison sentences for such offenses. Even where suspended prison sentences were imposed, Alabama law limited how much time a defendant could ultimately serve on those sentences. As a result, Mr. Gaines could not have served more than a year in prison based on his conviction for receiving stolen property. The evidence was therefore insufficient to prove Mr. Gaines's conviction for receiving stolen property was punishable by more than one year in prison.

3. <u>Suppression</u>

Evidence of the firearm should have been suppressed because it was obtained in violation of the Fourth Amendment and *Rodriguez v. United*

*States*, 575 U.S. 348 (2015). Under *Rodriguez*, a "police stop exceeding the time needed to handle the matter for which the stop was made violates the Constitution's shield against unreasonable seizures. *Id.* at 350. In this case, officers found the firearm during a traffic stop, while conducting a consent search of the stopped car. The stop violated *Rodriguez* because (1) officers frisked and searched two of the car's occupants without reasonable suspicion and without any basis related to the mission of the traffic stop; and (2) the consent search itself unlawfully prolonged the stop, particularly with respect to the non-consenting passengers like Mr. Gaines. Evidence found during the stop should therefore have been suppressed.

4. The Second Amendment

Mr. Gaines's conviction under 18 U.S.C. § 922(g)(1) violates his right to keep and bear arms. The statute is unconstitutional both on its face and as applied to Mr. Gaines, under the Second Amendment and *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (2022). Although current Eleventh Circuit precedent holds otherwise, that precedent should be reconsidered in light of *Bruen*. The government has not met its burden to prove, using relevant, historical evidence, that Mr. Gaines can

be disarmed on the basis of a conviction for receiving stolen property in the third degree, which requires only that the government prove Mr. Gaines intentionally possessed goods or property worth more than $500, which have been recently stolen.

5. <u>Acquitted Conduct</u>

The jury acquitted Mr. Gaines of possessing a firearm described in 26 U.S.C. § 5845, but the Court nevertheless applied an enhanced offense level based on that conduct. Although current Eleventh Circuit precedent permits a district court to consider, for sentencing purposes, relevant conduct of which a defendant was acquitted, this precedent should be reconsidered. The practice of using acquitted conduct to enhance a defendant's sentence violates the Fifth and Sixth Amendments.

# Argument

## I. The conviction must be vacated because the jury instructions misstated the law as to the scienter element of § 922(g)(1).

The district court's jury charge misstated the law, was misleading, and enabled the jury to convict Mr. Gaines upon finding that, at the time he possessed a firearm, he knew he had been convicted of a "felony." But the categorization of a conviction as a felony or misdemeanor is irrelevant under 18 U.S.C. § 922(g)(1). The statute requires a defendant to know he has been convicted of "a crime punishable by imprisonment for a term exceeding one year." *Id.* Knowledge the prior conviction is classified as a felony is neither necessary nor sufficient to support a conviction. Mr. Gaines's conviction must therefore be vacated.

### A. The jury instruction misstated the law and was misleading.

A jury instruction "must define the offense charged and its elements to enable the jury to apply the law to the facts." *United States v. Silverman*, 745 F.2d 1386, 1395–96 (11th Cir. 1984). The district court "has considerable discretion" in forming jury instructions, but "it does not have discretion to misstate the law or confuse the jury." *United States v. Lopez*, 590 F.3d 1238, 1247–48 (11th Cir. 2009).

20

Under § 922(g)(1), it is unlawful for any person "who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year" to possess a firearm in or affecting commerce. Under *Rehaif v. United States*, 139 S. Ct. 2191 (2019), in a prosecution under § 922(g), the government must prove the defendant "knew he belonged to the relevant category of persons barred from possessing a firearm." *Id.* at 2200. The relevant category of persons under § 922(g)(1) are persons convicted of crimes "punishable by imprisonment for a term exceeding one year," meaning Mr. Gaines had to have known his prior conviction was punishable by imprisonment for a term exceeding one year. *See Rehaif*, 139 S. Ct. at 2198 (explaining, in absence of knowledge requirement, "these provisions might apply to a person who was convicted of a prior crime but sentenced only to probation, who does not know that the crime is '*punishable* by imprisonment for a term exceeding one year.").

The term "felony" appears nowhere in the text of § 922(g)(1). Despite this, the district court included the term "felony" in its jury charge, instructing the jury the defendant could be found guilty if "at the time the defendant possessed the firearm, the defendant knew he had

21

previously been convicted of a felony, a crime punishable by imprisonment for more than one year." Trial Tr. III, Doc. 90, 68–69. The court's instruction was influenced by the pattern jury instruction.[3] *See id.* at 14.

It is common to use "felon" or "felony" as shorthand for the types of crimes covered by § 922(g)(1), even in legal opinions. *See, e.g., Greer v. United States*, 593 U.S. 503, 506 (2021) (explaining in "felon-in-possession cases" the government must prove the defendant "*knew he was a felon*").[4] But shorthand, however ubiquitous, cannot supplant the statutory text. A conviction under § 922(g)(1) does not hinge on the classification of a prior conviction as a felony or misdemeanor offense.

There is one exception found in 18 U.S.C. § 921(a)(20)(B), which states,

_____

[3] The pattern states, "The Defendant can be found guilty [if] at the time the Defendant possessed the firearm or ammunition, the Defendant knew [he][she] had previously been convicted of a felony." Judicial Council of the United States Eleventh Judicial Circuit, Criminal Pattern Jury Instructions O34.6, (March 2022 ed.).

[4] *Greer* held a defendant alleging a *Rehaif* error, who has the burden of proof on plain error review, must present some evidence he did not know he was a felon to meet the plain error standard. *Id.* at 509. The opinion uses "felony" as shorthand but did not consider whether "felony" would be appropriate in the context of a jury instruction.

> The term "crime punishable by imprisonment for a term exceeding one year" does not include . . . any State offense classified by the laws of the State as a misdemeanor and punishable by a term of imprisonment of two years or less.

*Id.* Under this exception, a conviction for an offense punishable by two years' imprisonment would qualify a person for prosecution under § 922(g)(1) if the prior conviction was classified as a felony, but not if it was classified as a misdemeanor.

But the exception proves the rule. Other than in the limited scenario set out in § 921(a)(20)(B), the classification of an offense as a misdemeanor or felony is not relevant. Under § 922(g)(1), it is no defense for a defendant to claim he believed his conviction was classified as a misdemeanor offense. *See, e.g., Range v. Att'y Gen. United States of Am.*, 69 F.4th 96, 100–101 (3d Cir. 2023) (en banc) (involving conviction under § 922(g)(1) based on "Pennsylvania misdemeanor punishable by up to five years' imprisonment"). Likewise, the government cannot convict a defendant based solely on his knowledge that his prior conviction was classified as a felony.

The label applied to the crime is not the relevant statutory criterion. As the Fourth Circuit recently explained, despite the frequent use of "felony" or "felon-in-possession" as shorthand, "[w]hat the

statutory text forbids is possessing a firearm after having been convicted of 'a crime punishable by imprisonment for a term exceeding one year.'" *United States v. Heyward*, 42 F.4th 460, 469 (4th Cir. 2022). It was therefore an error to instruct the jury that Mr. Gaines could be found guilty based on his knowledge "he had previously been convicted of a felony, a crime punishable by imprisonment for more than one year." Trial Tr. III, Doc. 90, 68–69.

Including the correct standard, "punishable by imprisonment for more than one year," together with the incorrect standard, "felony," does not lessen the error. This Court has recognized "[a] confused jury can give as improper a verdict as one which has failed to receive some significant instruction." *United States v. Kottwitz*, 614 F.3d 1241, 1270 (11th Cir. 2010), opinion withdrawn in part on denial of reh'g, 627 F.3d 1383 (11th Cir. 2010). In *United States v. Grigsby*, for example, this Court held a "district judge erred by including the modifier 'fraudulently' in her instructions to the jury" because that "adverb is not in the statute." 111 F.3d 806, 821 (11th Cir. 1997). This Court reversed the convictions in *Grigsby*, because the "jury could have been mislead or confused by this instruction." *Id.*; *see also McDonnell v. United States*, 579 U.S. 550, 579

(2016) (reversing conviction "[b]ecause the jury was not correctly instructed on the meaning of 'official act,' [and therefore] it may have convicted Governor McDonnell for conduct that is not unlawful.); *United States v. Ruan*, 56 F.4th 1291, 1298 (11th Cir. 2023) (reversing conviction where "the district court's instruction . . . inadequately conveyed the required mens rea to authorize conviction").

The instruction given here was not just confusing, it was wrong. Read in an ordinary way, the instruction makes "felony" the crucial object. "Felony" immediately follows the verb "convicted of" and is the object of that verb. The statutory text, "a crime punishable by imprisonment for more than one year," is demoted to an adjectival clause that does no more than clarify the meaning of "felony." Read this way, the instruction conveys to the jury that Mr. Gaines can be convicted if he "knew he had previously been convicted of a felony, [which is] a crime punishable by imprisonment for more than one year." Understood that way, the instruction is incorrect.

Even if the instruction can be read to offer two, alternative means of satisfying the scienter requirement, the instruction is erroneous because it is possible the jury rendered a verdict on an improper ground.

25

*See United States v. Takhalov*, 827 F.3d 1307, 1319 (11th Cir.), opinion modified on denial of reh'g, 838 F.3d 1168 (11th Cir. 2016) (holding instruction erroneous where "district court provided the jury with multiple paths by which they could arrive at a guilty verdict" and "[o]ne of those paths . . . was an impermissible one"). An instruction is erroneous if it is valid on one ground, but not on another, and it is impossible to tell which ground the jury selected. *See Stromberg v. People of State of Cal.*, 283 U.S. 359, 368 (1931) ("it is impossible to say under which clause of the statute the conviction was obtained"). The district court's instruction therefore cannot be upheld.

### B.    The error is not harmless.

Mr. Gaines's defense was that he did not know his conviction for receiving stolen property was punishable by over a year of imprisonment, despite knowing it was classified as a felony offense. In closing, he argued,

> Josh Gaines knew that he had been convicted of a non-prison felony. He heard from his state lawyer, and we heard from his state lawyer that's what he was told—no prison. It's a non-prison case.

Trial Tr. III, Doc. 90, 38. A properly instructed jury could have accepted this defense and concluded Mr. Gaines did not know his conviction was

punishable by more than a year's imprisonment. But under the erroneous jury instruction given, the jury needed only find Mr. Gaines knew his prior conviction was classified as a felony. It undercut Mr. Gaines's defense and was not harmless.

An erroneous jury instruction may only be harmless error if "it appears beyond a reasonable doubt that the [faulty jury instruction] did not contribute to the verdict obtained." *Takhalov*, 827 F.3d at 1321, quoting *Neder v. United States*, 527 U.S. 1, 16 (1999). The government cannot meet that standard here. *See id.* at 1323 ("it is the government's burden to demonstrate that the error was harmless"). The trial record contains ample evidence that, had a correct instruction been given, a rational jury could find Mr. Gaines did not have the requisite scienter. First, receiving stolen property in the third degree is a relatively minor offense. It is not so serious that the potentiality of a year or more of imprisonment would seem obvious. Second, the plea documents Mr. Gaines signed advised him the offense of receiving stolen property, a Class D felony, carried a "non-prison" penalty. Gov't Trial Ex. 2. They also failed to advise him of the broader statutory penalties that could be imposed for a Class D felony. *Id.* Third, the attorney who reviewed the

plea documents with Mr. Gaines, Thomas Jarvinen, testified he advised Mr. Gaines, "[t]his is non − what is considered under the sentencing guidelines a non-prison event. . . . So, presumptively, the guidelines say that this person cannot go to jail. . . . Cannot go to prison." Trial Tr. II, Doc. 89, 162. Fourth, Mr. Gaines was never advised of the statutory range of punishment for his offense. He was only advised of the presumptive guideline ranges. And as discussed in the next section, under those ranges the longest term of imprisonment he could have served was ten months' imprisonment. And even that term could only be imposed upon a probation revocation. Because a reasonable jury could have found Mr. Gaines did not have the requisite scienter, the error is not harmless and the conviction must be reversed.

## II. Because Alabama law requires non-prison sentences for Class D felony offenses, the evidence was insufficient to prove Mr. Gaines's conviction for receiving stolen property was punishable by more than one year in prison.

The government failed to prove Mr. Gaines had a prior conviction for a crime punishable by imprisonment for a term exceeding one year. To meet this element at trial, the government relied exclusively on Mr. Gaines's prior conviction for receiving stolen property in the third degree, a Class D felony under Alabama law. At first blush, that offense purports

to carry a penalty of "not more than 5 years or less than 1 year and 1 day." Ala. Code § 13A-5-6(a)(4). But at the time Mr. Gaines was convicted, Alabama law placed strict limits on the use of imprisonment for Class D felonies. Those limits, under Alabama's Split Sentencing Act and Sentencing Standards, prevented sentencing judges from imposing imprisonment for Class D felony convictions and, even where suspended prison sentences were imposed, prevented offenders from serving the full terms of their suspended sentences.

Judges' inability to send defendants to prison for Class D felony convictions during this time frame prompted calls for reform and ultimately resulted in the statutes being amended. *See* Mary Sell, *Law Enforcement: Class D felony 'experiment' a failure*, Alabama Daily News (September 20, 2022) (quoting law enforcement regarding need for "judges to have more leeway in sentencing, including an option for prison time" for Class D felony convictions); Alex Gladden, *District attorneys lead bipartisan push for stronger penalties in Alabama*, Montgomery Advisor (April 14, 2023) (explaining proposed legislation that "allows judges to send people with Class D felonies to prison" and quoting Barry Matson, the executive director for the Office of Prosecution Services on

the current state of the law: "People convicted of this felony do not have to go to prison . . . Right now, it's automatic . . . You don't go to jail."). At the time Mr. Gaines was sentenced, prison was not an option. His motion for acquittal should have been granted because he had not been convicted of a crime punishable by imprisonment for a term exceeding one year.

### A.    Alabama law limits the use of imprisonment for non-recidivist defendants convicted of Class D felonies.

At the time Mr. Gaines was convicted, Alabama Code stated the sentence for a Class D felony was imprisonment for "not more than 5 years or less than 1 year and 1 day and must be in accordance with subsection(b) of Section 15-18-8." Ala. Code § 13A-5-6(a)(4) (2019) (amended 2023). The cross-reference to § 15-18-8(b) (Split Sentencing Act) (2019) (amended 2023), combined with other provisions of the Code, prevented judges from imposing sentences of imprisonment on defendants convicted of Class D felonies.

First, the Split Sentencing Act required a sentencing judge to impose a sentence of "probation, drug court, or a pretrial diversion program," or confinement in "a consenting community corrections program" or, if no community corrections program existed, "to a high-intensity probation under the supervision of the Board of Pardons and

Paroles." Ala. Code § 15-18-8(b) and (e) (2019) (amended 2023). The only exception to this rule was for certain habitual offenders. *Id.* A defendant being sentenced while this statute was in effect could not receive a sentence of imprisonment, unless the defendant met the habitual offender requirements. *See Laakkonen v. State*, 293 So.3d 439, 444 (Ala. 2019) (reversing 24-month sentence under Ala. Code § 15-18-8(b) because "the only 'confinement' option available for a defendant convicted of a Class D felony . . . is a community-corrections program").

Also during this time frame, Alabama law provided for a suspended prison sentence to be imposed, but strictly limited how much of that suspended sentence could actually be served. Upon revocation of probation, where "the probationer was convicted of a Class D felony," the maximum period of incarceration was "limited to two years or one-third of the original suspended prison sentence, whichever is less." Ala. Code § 15-22-54(e) (2019) (amended 2021).

In addition to complying with these requirements, sentencing courts had to comply with mandatory sentencing standards. *See* Ala. Code § 12-25-34.2; *Clark v. State*, 166 So.3d 147, 149 (Ala. Crim. App. 2014) ("In 2012, the legislature enacted § 12-25-34.2, Ala. Code 1975,

31

effective May 15, 2012, to implement presumptive sentencing standards in place of the voluntary sentencing standards."). Where the presumptive standards apply, the sentence cannot exceed the presumptive range. *Id.* at 151. The only way a court can depart from the prescribed range is if an aggravating factor is alleged and proven to a jury beyond a reasonable doubt. *See Hyde v. State*, 185 So.3d 501, 513 (Ala. Crim. App. 2015) (reversing prison sentence because guidelines called for non-prison sentence and government had not alleged nor proven to jury any aggravating factor).

These statutory provisions meant no prison could be imposed based on Mr. Gaines's conviction for receiving stolen property in the third degree. And even though a suspended prison sentence could be and was imposed, it could only be triggered by a probation revocation, and even upon revocation, he could only be required to serve a third of the suspended sentence.

### B.    Mr. Gaines's Prior Conviction

Under these provisions, Mr. Gaines's conviction was not punishable by imprisonment for a term exceeding one year. Prior to pleading guilty,

32

Mr. Gaines signed an "Explanation of Rights" form explaining the penalties applicable to Mr. Gaines's case:

| Alabama Sentencing Commission<br>*Presumptive Sentencing Standards* | **EXPLANATION OF RIGHTS AND<br>PLEA OF GUILTY**<br>(Presumptive Sentencing Standards – Circuit or District Court)<br>(For Offenses sentenced on or after October 1, 2013) | Case Number<br>CC2019-4122 CMC<br>Count<br>(count, if applicable) |
|---|---|---|

IN THE _____ Circuit _____ **COURT OF** _____ Madison _____ , **ALABAMA**
          (Circuit or District)                      (Name of County)
**STATE OF ALABAMA v.** _____ Joshua Gaines _____
                                       **Defendant**

**TO THE ABOVE-NAMED DEFENDANT:** The Court, having been informed that you wish to enter a plea of guilty in this case, hereby informs you of your rights as a defendant charged with a criminal offense.
**PENALTIES APPLICABLE TO YOUR CASE**
You are charged with the crime of Receiving Stol. Prop-3rd , which is a Class D Felony . The Court has been informed that you desire to enter a plea of guilty to X this offense or _____ to the crime of _____ which is a _____ felony. As such this offense is a Presumptive Sentencing Standards Offense and the presumptive sentence range for this offense based on Presumptive Sentencing Standards worksheets and sentence length table for _____ Drugs X Property A. The Presumptive sentence disposition and range for this offense based on the worksheets and sentence length table is X non-prison _____ prison and 13 to 31 months, with, when prison is imposed, an incarceration portion of a split sentence from 6 to 12 months. This sentence range includes the total sentence length that will apply to all offenses sentenced at this sentence hearing. The court may depart from the presumptive sentence disposition or sentence range upon a finding of the existence of an aggravating or mitigating factor. The State has asserted the following aggravating factors:

Gov't Trial Ex. 2, at 4.

Mr. Gaines pleaded guilty to a Class D felony, for which the presumptive disposition was "non-prison" and the presumptive range was 13 to 31 months. *Id.* Mr. Gaines's lawyer testified that the "non-prison" classification, combined with the 13 to 31 month range, meant that the time imposed within that range "would be suspended—a suspended sentence, which means they would not go to jail initially." Trial Tr. II, Doc. 89, 163.

The "non-prison" classification comports with Alabama's Split Sentencing Act, which required Mr. Gaines's sentencing judge to impose

an alternative to incarceration. Ala. Code § 15-18-8 (2019) (amended 2023). Any sentence of imprisonment would have been unlawful. *See Laakkonen* 293 So.3d at 443–44 ("Although § 15-18-8(b) specifically provides that a defendant convicted of a Class C felony shall be confined 'in a prison, jail-type institution, treatment institution, or community corrections program,' the only 'confinement' option available for a defendant convicted of a Class D felony under the same circumstances is a community-corrections program."). The sentencing court could not impose any imprisonment for Mr. Gaines's conviction and could only impose a suspended term of imprisonment between 13 and 31 months.

Mr. Gaines received a 24-month suspended term of imprisonment. But even if he had received the maximum suspended term of 31 months, the most he could have served in prison was a little over ten months because even if a suspended prison term is triggered by a revocation of probation, incarceration for a Class D felony is "limited to two years or one-third of the original suspended prison sentence, whichever is less." Ala. Code § 15-22-54 (2019) (amended 2021). The net effect of these provisions is that, at the time Mr. Gaines was convicted and sentenced

for receiving stolen property, there is no circumstance under which he could have been punished with more than a year of imprisonment.

## C.    This case is not controlled by *Gardner.*

In denying the motion for judgment of acquittal, the district court indicated it was bound by this Court's decision in *United States v. Gardner*, 34 F.4th 1283 (11th Cir. 2022). *See* Trial Tr. III, Doc. 90, 4 ("[I]f we did not have the *Gardner* case in the Eleventh Circuit, I probably would be going your way. . . . [but] I think I'm bound to follow it."). In *Gardner*, this Court held that, under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), the "maximum term of imprisonment" for a drug offense referred to the statutory maximum penalty set under state law, not the maximum that could be imposed under Alabama's presumptive sentencing standards. 34 F.4th at 1284. *Gardner* does not control this case for two reasons. First, this case involves a different statute and different statutory language. Second, *Gardner* involved Class C and B felony convictions under Alabama law and therefore did not consider the statutory limitations on the use of imprisonment as punishment for Class D felony convictions.

35

First, *Gardner* does not control because it considered different statutory language. *Gardner* interpreted the ACCA, under which the question is whether "an offense under State law" had a "maximum term of imprisonment of ten years or more . . . prescribed by law." 18 U.S.C. § 924(e)(2)(A)(ii). In answering that question, this Court looked only to "the maximum sentence for the offense category" and not to the "particular facts of the defendant's crime." *Gardner*, 34 F.4th at 1286–87, quoting *McCarthy v. United States*, 135 F.3d 754, 757 (11th Cir. 1998). Applying that standard, this Court held the maximum term of imprisonment prescribed for Mr. Gardner's Class C and Class B felonies was the maximum set by Alabama statute for a recidivist offender convicted of those classes of crimes—twenty years and life, respectively. *Gardner*, 34 F.4th at 1287, 1290. The Court considered the statutory recidivist provisions to determine "the maximum sentence," but did not consider the particular defendant's sentencing range under Alabama's sentencing guidelines.

This case involves a different question. The statutory question here is whether a defendant "has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year." 18 U.S.C.

§ 922(g)(1). Unlike the ACCA, which refers to the "maximum term" that can be imposed for an "offense under State law," 18 U.S.C. § 924(e)(2)(A)(ii), section 922(g)(1) refers to a specific conviction and requires the court to determine what that conviction is "punishable by."

The Supreme Court considered similar language when it had to determine whether an immigrant had been "convicted" of a "felony punishable" under the Controlled Substances Act. *Carachuri-Rosendo v. Holder*, 560 U.S. 563 (2010). In that case, the Court explained the statutory text, "convicted of," "indicates that we are to look to the conviction itself as our starting place." *Id.* at 576; *see also United States v. Valencia-Mendoza*, 912 F.3d 1215, 1223 (9th Cir. 2019) ("'Punishable' suggests a realistic look at what a particular defendant actually could receive, whereas 'maximum term of imprisonment ... prescribed by law' suggests a mechanistic examination of the highest possible term in the statute.").

Like the statute at issue in *Carachuri-Rosendo*, section 922(g)(1) refers to a defendant's specific conviction, not a general offense category. And the *Gardner* decision specifically disclaimed reliance on *Carachuri-Rosendo* because of its different statutory language. *See  Gardner*, 34

37

F.4th at 1289 n.3. ("*Carachuri-Rosendo* was decided in the immigration context and addressed the materially different question of whether a petitioner seeking cancellation of removal had been convicted of an offense **"punishable" by** more than one year under the Controlled Substances Act and therefore **was convicted** of an "aggravated felony" for purposes of the Immigration and Nationality Act." (emphasis added)). Instead of looking at the hypothetical maximum sentence that could be imposed, as was done in *Gardner*, under § 922(g)(1) and *Carachuri-Rosendo* this Court should ask whether Mr. Gaines's specific conviction was punishable by a year or more of imprisonment. And the answer is that it was not.

This approach has been adopted by both the Ninth and Tenth Circuits, which have held a "conviction is only 'punishable by' a year or more of imprisonment for purposes of § 922(g)(1) if the defendant's conviction actually exposed the defendant to that sentence under the state's mandatory sentencing scheme." *United States v. McAdory*, 935 F.3d 838, 843 (9th Cir. 2019); *see also United States v. Hisey*, 12 F.4th 1231, 1239 (10th Cir. 2021) ("No reasonable juror could find Mr. Hisey guilty of unlawfully possessing firearms because his prior conviction

hadn't triggered the possibility of any imprisonment at the moment that he possessed the firearms.").

The second reason *Gardner* is not controlling here is that it considered only Class C and B felonies. 34 F.4th at 1287. In that case, therefore, this Court did not have the occasion to consider the statutory limitations that apply to Class D felony convictions. But at the time of Mr. Gaines's conviction, those statutory limitations required the sentencing court to impose a non-prison sentence. *See* Ala. Code § 15-18-8(b) and (e) (2019) (amended 2023). And even in *Gardner*, the Court considered the statutory recidivist provisions that applied to the defendant in that case. *See Gardner*, 34 F.4th at 1287, 1290 (determining statutory maximums in light of "Gardner's habitual offender status"). Nothing in *Gardner*, therefore, prohibits this Court from considering the provisions of statutory law that prevent non-recidivist offenders from receiving and serving prison sentences for Class D felony convictions. Because those provisions meant that Mr. Gaines could not receive a prison sentence for his conviction for a Class D felony, the evidence was insufficient to prove he had been convicted of "a crime punishable by imprisonment for a term exceeding one year." 18 U.S.C. § 922(g)(1).

## III.  Evidence of the firearm should have been suppressed prior to trial under the Fourth Amendment.

The Fourth Amendment prohibits "unreasonable searches and seizures." U.S. Const. amend IV. A traffic stop is a seizure of a car's driver and passengers. *See Brendlin v. California*, 551 U.S. 249, 251 (2007) ("We hold that a passenger is seized . . . and so may challenge the constitutionality of the stop."). A traffic stop and any ongoing detention must therefore be justified with reasonable suspicion: "the tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's mission—to address the traffic violation that warranted the stop . . . and attend to related safety concerns." *Rodriguez v. United States*, 575 U.S. 348, 354 (2015) (internal quotations and citations omitted).

The decision below found that when officers pulled over the car Mr. Gaines was riding in, they had two legitimate missions, first, investigating a broken tag light and, second, addressing the fact that the driver did not have a valid license. Doc. 42, at 1. In addition to pursuing those concerns, officers frisked and searched the car's occupants. The officers also searched the car and its contents based on the driver's consent. These searches prolonged the traffic stop in violation of

40

*Rodriguez* because they were not related to the legitimate purposes of the stop and they occurred while the car's occupants remained detained.

The district court did not analyze the frisks and searches under *Rodriguez*, but instead held the driver's consent to search the car justified the ongoing detention of all the car's occupants. Doc. 44, at 5. Rather than considering whether these investigative detours added time to the stop, the court below considered whether the frisks and searches caused "unreasonable delay." *See* Doc. 42, at 48, 53 ("Frisking the Occupants Did Not Unreasonably Delay the Consent Search"; "Properly conceived, the frisks of Riley and Beauchamp appertain to the reasonableness of the consent search's duration, not the duration of the traffic stop vis-à-vis its mission."). The decision below should be reversed because the Fourth Amendment does not permit a traffic stop to be prolonged on the basis of a consent search. Even if a driver can consent to extending a traffic stop for purposes of a consent search, it does not follow that the driver's consent extends to the car's passengers.

## A. Mr. Gaines has standing to contest his own prolonged detention.

As a passenger in the stopped car, Mr. Gaines has standing to challenge the constitutionality of the stop and any evidence obtained as a result of the unlawful seizure. *See Brendlin* 551 U.S. at 251 ("We hold that a passenger is seized . . . and so may challenge the constitutionality of the stop."). Mr. Gaines has standing because the evidence found in the car was a fruit of his unlawful seizure. *Id.*

## B. The frisks and searches of the car's occupants violated the Fourth Amendment.

The magistrate judge's report made the following findings related to the frisks of the car's occupants: (1) "the frisks do not relate to the purpose of investigating the offenses of faulty tag lights and driving without a license;" (2) officers did not have reasonable suspicion to frisk Ms. Riley, Mr. Beauchamp, or Mr. Gaines, and (3) the frisks of Ms. Riley and Mr. Beauchamp occurred before Officer Johnson called for backup assistance, and they therefore delayed the stop. Doc. 42, at 49–53. The district court adopted these findings. Doc. 44, at 17.

The magistrate judge's findings set out a straightforward *Rodriguez* violation. The officers took time to frisk Ms. Riley and Mr. Beauchamp. Those frisks were not based on reasonable suspicion, nor were they

related to the mission of the stop. And they added time to the stop, because no other mission-related tasks were ongoing at the time of the frisks.

*Rodriguez* holds that on-scene investigation into other crimes, as well as safety precautions taken to facilitate those investigations, detour from the mission of the stop and must be independently justified. 575 U.S. at 356; *see also Baxter v. Roberts*, 54 F.4th 1241, 1260 (11th Cir. 2022) ("Deputy Lee's related order for Baxter to step out of his truck so that he could conduct the dog sniff was not part of the traffic stop's mission."). Officers had no such independent justification here. The magistrate found that three of the car's occupants were frisked without any reasonable suspicion. Doc. 42, at 49–53. The magistrate also found that two of these frisks added time to the stop. *Id.* The frisks therefore violated the Fourth Amendment and *Rodriguez*.

The opinions below err by applying an "unreasonable delay" standard instead of applying *Rodriguez*. But there is no basis to treat the frisks differently than any other *Rodriguez* violation and the *Rodriguez* standard should govern. The suppression motion should therefore have been granted based solely on these unnecessary frisks.

43

## C. The consent search is an additional *Rodriguez* violation.

The opinions below commit a similar error regarding the consent search of the car. The magistrate's report, adopted by the district court, found there was no *Rodriguez* violation because the driver's "consent for officers to search the vehicle . . . permits prolongation of the police encounter to effect the search." Doc. 42, at 36. To reach this conclusion, the report concludes the driver's consent to a search of the car converted the initial detention to a consensual encounter. *Id.* at 37.

But the traffic stop was not consensual. And Mr. Gaines, specifically, never consented to the search or to his ongoing detention. The encounter between the officers and Mr. Gaines began with a traffic stop and ended in his arrest. At no point during the stop was Mr. Gaines free to leave.

The only circumstance in which this Court has found a traffic stop converts to a consensual encounter is when the detention ends. *See United States v. Ramirez*, 476 F.3d 1231, 1238, 1240 (11th Cir. 2007) (holding encounter consensual after defendant "had been handed his paperwork and had received the traffic citation"); *United States v. Pruitt*, 174 F.3d 1215, 1220 (11th Cir. 1999) (explaining "encounter cannot

become consensual while officer retains driver's documents"); *United States v. Burwell*, 763 F. App'x 840, 845–46 (11th Cir. 2019) (unpublished) (holding exchange between police and driver became cooperative because driver "had everything he reasonable required to proceed on his journey but voluntarily agreed to answer [officer's] additional questions").

The Supreme Court concluded similarly in *Arizona v. Johnson*, rejecting the argument that a traffic stop had become a consensual encounter:

> A lawful roadside stop begins when a vehicle is pulled over for investigation of a traffic violation. The temporary seizure of driver and passengers ordinarily continues, and remains reasonable, for the duration of the stop. Normally, the stop ends when the police have no further need to control the scene, and inform the driver and passengers they are free to leave. *See Brendlin*, 551 U.S., at 258, 127 S.Ct. 2400. An officer's inquiries into matters unrelated to the justification for the traffic stop, this Court has made plain, do not convert the encounter into something other than a lawful seizure, so long as those inquiries do not measurably extend the duration of the stop.

*Arizona v. Johnson*, 555 U.S. 323, 333–34 (2009). The district court's conclusion that the stop had become consensual should therefore be rejected and reversed.

### 1. The driver did not impliedly consent to any prolonged detention by consenting to a search.

The opinions below cite pre-*Rodriguez* cases to support the conclusion that officers can prolong a traffic stop to conduct a consent search of a vehicle, but those cases are no longer good law. Under the *Rodriguez* framework, it is not enough that the search be legitimate, any ongoing seizure of the car's occupants must also be legitimate.

Since *Rodriguez*, multiple courts have held that police cannot use consent searches as a justification for prolonging a traffic stop. *See, e.g.*, *United States v. Keith*, 2021 WL 6340985, at *4 (S.D. Ga. Dec. 2, 2021) ("the blanket proposition that officers can always ask for consent to search during a traffic stop is no longer good law after *Rodriguez*"); *United States v. Coleman*, No. 7:21-cr-00233-LSC-SGC, Doc. 46, slip op. at *11 (N.D. Ala. Aug. 4, 2022) (agreeing with *Keith* and rejecting "any argument by the government that it was permissible for Officer Albaradei to ask for consent to search"); *United States v. Ward*, 2017 WL 1549474, at *4 (N.D. Cal. May 1, 2017) ("If the rule in *Rodriguez* . . . is to have any force, the police cannot prolong a driver's detention for the purpose of eliciting consent for a search to uncover ordinary criminal activity and then rely on that consent to excuse the length of the stop.");

*United States v. Mahone*, 179 F. Supp. 3d 760 (E.D. Mich. April 8, 2016) (holding defendant's consent to search "did not support a search of the car after officers had completed their traffic violation investigation without searching the vehicle").

The decision below relies heavily on this Court's decision in *United States v. Vargas*, 848 F.3d 971 (11th Cir. 2017), but that case does not control here. The facts of *Vargas* are that Corporal Minor pulled over a car for a traffic violation and discovered that neither the car's driver nor the passenger had a driver's license. *Id.* at 973. Corporal Minor asked the driver a few questions and then decided to issue him a warning for a traffic violation. *Id.* After spending eighteen minutes of the stop dealing with the traffic violation and attempting to determine how to get the car safely and legally moved from the roadside, Corporal Minor asked the driver for permission to search the car and he consented. *Id.* This Court held that what "prolonged the stop was not Minor's desire to search the vehicle but the fact that both occupants of it could not lawfully drive it away." *Id.*

*Vargas* did not hold that consent alone permitted Corporal Minor to prolong the stop beyond the time necessary to complete the traffic

mission. To the contrary, the Eleventh Circuit found the search was conducted while Corporal Minor's traffic-related duties were ongoing. In other words, Corporal Minor was fulfilling traffic-related duties before and during the consent search. Neither the consent to search, nor the search itself, prolonged the stop. *Vargas* simply does not address whether a driver's consent, standing along, can justify prolonging the detention of a car's occupants. And unlike in *Vargas*, here the occupants of the car could and did drive away once the stop was completed. The search therefore prolonged their detention.

The report also cites one footnote, out of context, in which this Court appears to hold that a driver's consent to search may also be construed as a consent to detention. *See* Doc. 42, p.38 (quoting *United States Gonzalez*, 275 F. App'x 930, 933 (11th Cir. 2008) (unpublished), which itself quotes *United States v. Purcell*, 236 F.3d 1274, 1279 n.8 (11th Cir. 2001), which states, "Once Shon Purcell agreed to the search, the remainder of the detention was consensual so long as the scope of the search did not exceed the consent given.").

But *Purcell* involved a traffic stop that was concluding as Mr. Purcell was consenting to the search. This Court noted, "Deputy Warren

was giving the citation to Shon Purcell to sign when he asked for and received consent to search the vehicle." *Id.* at 1282. In other words, the traffic stop had ended and converted to a consensual encounter at the time the consent was given. The remainder of Mr. Purcell's detention was consensual because the stop had concluded and Mr. Purcell was free to go, not because the consent itself justified Mr. Purcell's ongoing detention. Mr. Purcell "had everything he reasonably required to proceed on his journey," *Burwell*, 763 F. App'x at 846, whereas here, Mr. Gaines did not because his traffic stop was ongoing.

Similarly, in *Gonzalez*, the defendant consented to a search after the officer advised him that he was issuing a warning and while the officer was completing the traffic warning. *Gonzalez*, 275 F. App'x at 931. These cases therefore do not stand for the general proposition that a consent to search is necessarily also a consent to detention, regardless of when that consent is obtained. The better reading of *Purcell* and *Gonzalez* is that the encounters between the defendants and the officers in those cases had become consensual. Not only was the search of the car consensual, but there was also no ongoing detention because the traffic stop had concluded.

49

In this case, Officer Johnson obtained Ms. Riley's consent in the midst of an ongoing detention. None of the car's occupants were free to leave at the time the consent was given. Nor were they free to leave while the consent search was being conducted. Because the initial detention never became a consensual encounter, Ms. Riley's consent may have justified the search, but it could not justify the ongoing detention.

### 2. The driver's consent to search cannot justify the ongoing detention of the car's passengers.

Even if a consent to search, standing alone, can justify prolonging the detention of the consenting party, Ms. Riley's consent to search cannot legitimize the ongoing detention of the non-consenting passengers. At least one of the cases cited by the decision below, *United States v. Hill*, 852 F.3d 377 (4th Cir. 2017), suggests that officers must obtain consent from all affected individuals before relying on consent to delay a stop. *Id.* at (stating officers must obtain consent from "**individuals** detained").

Mr. Gaines never consented to his detention being prolonged so that Officers Johnson and Baker could conduct a consent search of the car. The decisions below suggest Mr. Gaines's silence or lack of protest constitutes consent, but that conclusion must be rejected because it

shows nothing more than acquiescence to a claim of lawful authority. The magistrate's report, for example, concludes Mr. Gaines acquiesced to the consensual search, or at least failed to object to the consensual search. Doc. 42, at 73; *see also* Doc. 44, at 15 (discussing "Gaines's failure to object to Riley's consent"). Failure to object is not sufficient for the government to meet its "burden of proving both the existence of consent and that the consent was not a function of acquiescence to a claim of lawful authority." *United States v. Yeary*, 740 F.3d 569, 581 (11th Cir. 2014); *see also Bumper v. North Carolina*, 391 U.S. 543, 548–49 (1968) (holding the government's "burden cannot be discharged by showing no more than acquiescence to a claim of lawful authority").

In the absence of his consent, therefore, Mr. Gaines's detention remains unlawful, even if Ms. Riley's detention does not. Even the cases cited below appear to support this point—the person whose detention is being extended is the person who must consent to that prolonged detention. *See, e.g.,* U*nited States v. Salkil,* 10 F.4th 897, 898 (8th Cir. 2021) (driver challenging the search was also the person who consented to the search); *United States v. Leon*, 924 F.3d 1021, 1023 (8th Cir. 2019) (same); *United States v. Bernard*, 927 F.3d 799, 803 (4th Cir. 2019)

(same); *United States v. Hill*, 852 F.3d 377, 381 (4th Cir. 2017) (in case involving multiple occupants, court holds that "the officers must either obtain consent from the **individuals** detained" (emphasis added)); *United States v. Hernandez*, 418 F.3d 1206, 1208 (11th Cir. 2005) (in case involving driver and defendant-passenger, the state trooper obtained consent to search from both occupants).

The only case cited below to suggest otherwise is *United States v. Tuton*, 893 F.3d 562 (8th Cir. 2018). In *Tuton*, police stopped a bus for a traffic infraction. Jose Soto was the driver of the bus, and Coleman Tuton was a passenger. Mr. Soto consented to a search of the bus, which turned up controlled substances in Mr. Tuton's luggage. Mr. Tuton then moved to suppress the evidence under *Rodriguez*, claiming the stop had been unlawfully prolonged.

In a one-paragraph analysis, the Eighth Circuit cited *Florida v. Bostick*, 501 U.S. 429, 436 (1991), to hold that, "**Tuton was not seized during the search**; he made the decision to ride the bus to his destination." *United States v. Tuton*, 893 F.3d 562, 568 (8th Cir. 2018) (emphasis added). Not only was Mr. Tuton's detention not prolonged by the search, the Eighth Circuit held that he was not detained at all. The

52

Eighth Circuit apparently arrived at this conclusion because in *Bostick*, the Supreme Court held that a bus passenger was not seized when officers boarded the bus at a stopover in Ft. Lauderdale. In holding that "Tuton was not seized during the search," the Eighth Circuit apparently took *Bostick* to mean that bus passengers are *never* seized. The *Tuton* case therefore cannot support the conclusion that a driver may consent to prolonging a passenger's detention. It explicitly states only that, on the unique facts of that case, the bus passenger was not seized at all.

In sum, even if Ms. Riley consented to her own prolonged detention, that consent cannot be ascribed to the non-consenting passengers like Mr. Gaines. His ongoing detention during the search of the car was therefore unlawful, even if Ms. Riley's was not.

**3. Even if the driver's consent is valid to prolong the detention during the search of the car, it could not justify prolonged detention during the search of the backpack because she did not have apparent authority to consent to a search of the passengers' items.**

While searching the car based on the consent of Ms. Riley, Officer Johnson also searched the passengers' personal items. One of these items, a red backpack in the backseat, contained the firearm. The magistrate judge below concluded that the driver, Ms. Riley, did not have

apparent authority to consent to the search of the backpack where the gun was found. Doc. 42, at 77 n.34. Therefore even if Ms. Riley's consent permitted Officer Johnson to prolong the traffic stop to conduct a general search of the car, it could not permit Officer Johnson to prolong the stop to conduct a search of the backpack.

The search of the backpack must have unlawfully prolonged the stop because, (1) it was not related to the purpose of the stop; (2) it was not supported by reasonable suspicion; and (3) it was not supported by Ms. Riley's consent. Prolonging Mr. Gaines's ongoing detention during Officer Johnson's search of the backpack was thus unlawful and the fruits of that search, the gun, is a fruit of that unlawful seizure.

The district court concluded Mr. Gaines's waived this argument because he did not raise it before the magistrate judge. But Mr. Gaines alleged in his initial motion that officers prolonged the stop by requesting consent to search and conducting the consent searches. Doc. 15, at 2–3. At that time, the magistrate judge had not yet ruled Ms. Riley's consent could justify prolonging the stop. There was no need to distinguish, therefore, between the consent to search the car and the consent to search the backpack. Once the magistrate did so rule, Mr. Gaines raised the

issue in his objections to the magistrate's report. Doc. 43, at 16. The issue was not waived.

## IV. The conviction under § 922(g)(1) violates Mr. Gaines's Second Amendment right to keep and bear arms.

A jury convicted Mr. Gaines under 18 U.S.C. § 922(g)(1), which permanently disarms all people with prior convictions for any offense punishable by imprisonment for more than one year.[5] The statute is unconstitutional, both on its face and as applied to Mr. Gaines, under the Second Amendment and *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (2022). The Supreme Court's decision in *Bruen* demands a fresh look at § 922(g)(1) through the lens of the Second Amendment's text, history, and tradition. The Third Circuit, sitting en banc, has recognized that *Bruen's* standard and methodology now cast doubt on § 922(g)(1). *Range v. Att'y Gen. United States of Am.*, 69 F.4th 96, 100–101 (3d Cir. 2023). In *Range*, the Third Circuit held an as-applied challenge to

---

[5] Congress originally provided a means for people to re-establish their right to bear arms by petitioning the Attorney General. 18 U.S.C. § 925(c). But since 1992, Congress has barred the relevant agency from acting on applications for relief. *See United States v. Bean*, 537 U.S. 71, 74 (2002) (explaining Congress barred agency from using appropriated funds to investigate or act upon petitions for relief).

§ 922(g)(1) could and would prevail—"[b]ecause the Government has not shown that our Republic has a longstanding history and tradition of depriving people like Range of their firearms, § 922(g)(1) cannot constitutionally strip him of his Second Amendment rights." *Id.* at 106.

Prior to *Bruen*, this Court held § 922(g)(1) was constitutional. *See United States v. Rozier*, 598 F.3d 768, 771 (11th Cir. 2010) ("statutory restrictions of firearm possession, such as § 922(g)(1), are a constitutional avenue to restrict the Second Amendment right of certain classes of people"). And a panel of this Court recently held that *Bruen* did not abrogate *Rozier*. *United States v. Dubois*, No. 22-10829, 2024 WL 927030, at *5 (11th Cir. Mar. 5, 2024). Mr. Gaines disagrees, but understands this Panel must follow these prior precedents, at least with respect to his facial challenge. *See id.* at *5 ('a prior panel's holding is binding on all subsequent panels unless and until it is overruled or undermined to the point of abrogation by the Supreme Court or by this court sitting *en banc*"). *Rozier* should be reconsidered in light of *Bruen*.

Neither *Rozier* nor *Dubois* appears to consider, however, whether § 922(g)(1) can be subjected to an as-applied attack. In this case, Mr. Gaines claimed he got a gun from a friend to protect himself and the

house where he was staying. The government presented no evidence to rebut or contest this claim. The government nevertheless argued Mr. Gaines's possession of the gun was illegal because Mr. Gaines had a prior conviction for receiving stolen property in the third degree under Ala. Code § 13A-8-18.1.

Underscoring the relatively minor nature of this offense, to be convicted of receiving stolen property, a person need only intentionally "possess goods or property which have been recently stolen," because that constitutes "prima facie evidence that [the defendant] has the requisite knowledge or belief" that the goods are stolen. Ala. Code § 13A-8-16. And to be convicted of a felony version of that offense, the government need only show the value of the goods exceeds five hundred dollars. Ala. Code § 13A-8-18.1.

Under *Bruen*, the government must prove § 922(g)(1) is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms. 142 S. Ct. at 2127. While *Bruen* does not purport to undertake a comprehensive historical analysis, it does set out several useful guideposts for courts to follow:

1. The relevant historical record is the founding era when the Second Amendment was adopted in 1791, and potentially when the Fourteenth Amendment incorporated the Bill of Rights with respect to the States in 1868. *Id.* at 2136.

2. The *Bruen* framework places the burden affirmatively on the government. The Court remarks, "we are not obligated to sift the historical material for evidence to sustain New York's statute [because that] is respondent's burden." *Id.* at 2150.

3. The analysis should be "fairly straightforward" with respect to regulations that address general societal problems that have existed since the 18th century:

   For instance, when a challenged regulation addresses a general societal problem that has persisted since the 18th century, the lack of a distinctly similar historical regulation addressing that problem is relevant evidence that the challenged regulation is inconsistent with the Second Amendment. Likewise, if earlier generations addressed the societal problem, but did so through materially different means, that also could be evidence that a modern regulation is unconstitutional.

   *Id.* at 2131.

4. When presented with "unprecedented societal concerns or dramatic technological changes," courts must employ analogical reasoning, meaning the court considers whether the modern regulation and its

58

historical analogues "impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified." *Id.* at 2132–33.

5. The relevant unit of comparison should not be defined too broadly. *Id.* at 2134. Using "sensitive places" as an example, the Court was skeptical that historical laws regulating carriage of firearms in "sensitive places" could justify "New York to effectively declare the island of Manhattan a 'sensitive place.'" *Id.* at 2134 ("[E]xpanding the category of 'sensitive places' simply to all places of public congregation that are not isolated from law enforcement defines the category of 'sensitive places' far too broadly."). Courts are not free to define historical categories as broadly as they see fit, but must assess the historical record of sensitive places where weapons were prohibited and "can use analogies to those historical regulations of 'sensitive places' to determine that modern regulations prohibiting the carry of firearms in *new* and analogous sensitive places are constitutionally permissible." *Id.* at 2133.

Applying this framework, there is no basis in the Second Amendment's text, nor in the Nation's history and tradition, to uphold

§ 922(g)(1) as applied to Mr. Gaines. Mr. Gaines is part of "the people" protected by the Second Amendment. This Court has characterized even "dangerous felons" as "indisputably part of 'the people.'" *United States v. Jimenez-Shilon*, 34 F.4th 1042, 1046 (11th Cir. 2022). Likewise, Mr. Gaines's conduct, possession of a firearm, easily qualifies protected conduct, keeping and bearing arms. Because the Second Amendment's plain text covers the person and conduct at issue, the Constitution presumptively protects that conduct.

The government cannot show § 922(g)(1) constitutionally disarms Mr. Gaines on the basis of a conviction for receiving stolen property in the third degree. Congress enacted the first version of this ban on firearms possession in 1961.[6] The federal ban was preceded by narrower restrictions from the 1920s and 1930s, at both the state and federal levels, which prohibited people with prior convictions for crimes of

---

[6] A 1961 amendment to the Federal Firearms Act prohibited all persons with a prior felony conviction from receiving any firearm in interstate commerce. *See* C. Kevin Marshall, *Why Can't Martha Stewart Have a Gun?*, 32 Harv. J.L. & Pub. Pol'y 695, 698–99 (2009). In 1968, Congress extended the prohibition to ban possession of any firearm that had ever traveled in interstate commerce. *Id.*

violence from possessing handguns.[7] And before those enactments, bans on convicts possessing firearms were unknown, leading one historian to conclude, "American law recognized a zone of immunity surrounding the privately owned guns of citizens."[8] The earliest versions of § 922(g)(1), even if they are considered relevant history, "initially covered those

---

[7] Marshall, *supra* n.6, at 700–01 ("The 1926 Act provided that a person convicted of a crime of violence could not own or have in his possession or under his control, a pistol or revolver." (internal quotations omitted). In 1925, the National Conference of Commissioners on Uniform State Laws' compilation of state firearms prohibitions "indicated that no State banned possession of long guns based on a prior conviction; that only six banned possession of concealable weapons on such basis; that, except for New York, whose Sullivan Law licensed all possession of a concealable weapon in a town, and since 1917 had automatically revoked one's license upon a felony conviction, even those laws dated from 1923 or later; and that no State with a constitutional arms right had enacted such law until 1925." *Id.* at 708.

[8] Robert H. Churchill, *Gun Regulation, the Police Power, and the Right to Keep Arms in Early America: The Legal Context of the Second Amendment*, 25 Law & Hist. Rev. 139, 142 (2007); *see also* Marshall, *supra* n.6, at 708 (concluding that bans on convicts carrying firearms were unknown prior to World War I); Adam Winkler, *Heller's Catch-22*, 56 UCLA L. Rev. 1551, 1563 (2009) ("The Founding generation had no laws limiting gun possession by the mentally ill, nor laws denying the right to people convicted of crimes."); Carlton F.W. Larson, *Four Exceptions in Search of A Theory: District of Columbia v. Heller and Judicial Ipse Dixit*, 60 Hastings L.J. 1371, 1374 (2009) ("no colonial or state law in eighteenth-century America formally restricted the ability of felons to own firearms").

convicted of a limited set of violent crimes such as murder, rape, kidnapping, and burglary." *Range*, 69 F.4th at 104 (3d Cir. 2023).

In *Range*, the Third Circuit found no historical evidence suggesting someone could be disarmed based on a conviction for making a false statement to obtain food stamps punishable by five years' imprisonment. 69 F.4th at 105. Similarly, here, there is no evidence someone like Mr. Gaines would have been disarmed in the Founding Era on the basis of a conviction for receiving stolen property. Because the Government has not shown a longstanding history and tradition of depriving people like Mr. Gaines of their firearms, § 922(g)(1) cannot constitutionally strip him of his Second Amendment rights.

## V. **Sentencing Mr. Gaines based on acquitted conduct violates his rights under the Fifth and Sixth Amendments.**

At sentencing, the district could erred by enhancing the sentence based on acquitted conduct. The jury acquitted Mr. Gaines of possessing a firearm described in 26 U.S.C. § 5845, but the Court nevertheless applied an enhanced offense level based on that conduct. The presentence report, adopted by the district court at sentencing, assigned a based offense level of 20 under USSG § 2K2.1(a)(4) because "the offense involved a firearm that is described in 26 U.S.C. § 5845." PSR ¶ 17. That

ultimately resulted in the guidelines sentencing range of 41–51 months. PSR ¶ 77. Without that finding, the base offense level would be 14 under USSG § 2K2.1(a)(6) and the guidelines range would be 21–27 months.

Current Eleventh Circuit precedent permits the Court to consider, for sentencing purposes, relevant conduct of which a defendant was acquitted "as long as the government proves the acquitted conduct relied upon by a preponderance of the evidence." *United States v. Faust*, 456 F.3d 1342, 1347 (11th Cir. 2006). Although this panel is bound by prior precedents, this precedent is due to be reconsidered. Distinguished jurists have long criticized the practice of using acquitted conduct to enhance a defendant's sentence on grounds it violates the Fifth and Sixth Amendments. *See Jones v. United States*, 574 U.S. 948 (2014) (Scalia, J., dissenting from denial of certiorari) ("It unavoidably follows [from the Fifth and Sixth Amendments] that any fact necessary to prevent a sentence from being substantively unreasonable—thereby exposing the defendant to the longer sentence—is an element that must be either admitted by the defendant or found by the jury."); *United States v. Bell*, 808 F.3d 926, 928 (D.C. Cir. 2015) (Kavanaugh, J., concurring in the denial of rehearing en banc) ("Allowing judges to rely on acquitted or

uncharged conduct to impose higher sentences than they otherwise would impose seems a dubious infringement of the rights to due process and to a jury trial."); *United States v. Sabillon-Umana*, 772 F.3d 1328, 1331 (10th Cir. 2014) (Gorsuch, J.) ("It is far from certain whether the Constitution allows" a district judge to "increase a defendant's sentence (within the statutorily authorized range) based on facts the judge finds without the aid of a jury or the defendant's consent"). Mr. Gaines maintains the use of acquitted conduct to enhance his sentence violates his rights under the Fifth and Sixth Amendments.

# Conclusion

The judgment should be reversed.

Respectfully Submitted,

KEVIN L. BUTLER
Federal Public Defender
Northern District of Alabama

ALEXANDRIA DARBY
Appellate Attorney

TOBIE J. SMITH
Appellate Attorney

/s/ Oswald
_____
DEANNA LEE OSWALD
Assistant Federal Defender
200 Clinton Ave. West, Suite 503
Huntsville, AL 35801
256-684-8700
Deanna_Oswald@fd.org

# Certificate of Compliance

Counsel for Joshua Gaines certifies under Fed. R. App. P. 32(g) that this brief complies with the volume limitations set forth in Fed. R. App. P. 32(a)(7)(B) and 11th Cir. R. 32-4. The brief contains 12,873 countable words. Century Schoolbook 14 is the style and type size used in this brief.

/s/ Oswald

Deanna Lee Oswald

# Certificate of Service

I certify that on May 3, 2024, the foregoing corrected brief was filed electronically using this Court's CM/ECF system, which will provide notice of filing to all counsel of record. A true and correct copy was also served by either first-class United States mail or Federal Express overnight delivery, postage prepaid, on the following person:

Joshua E. Gaines
Reg. # 08422-510
FCI Beckley
P.O. Box 350
General & Legal Mail
Beaver, WV 25813

On this same date, the original and additional copies of the foregoing corrected brief were filed by Federal Express overnight delivery, postage prepaid, addressed as follows:

Clerk's Office — Appeal No. 24-10117
United States Court of Appeals for the Eleventh Circuit
56 Forsyth Street N.W.
Atlanta, Georgia 30303

_s/Oswald_
Deanna Lee Oswald

67